

1  KAREEM SALESSI
2  28841 ALOMA AVE.
   LAGUNA NIGUEL, CA. 92677
3  TEL: (949) 218 7666
   Plaintiff
4

FILED

NOV 10 2008

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _____ DEPUTY
4:19 pm

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

KAREEM SALESSI,

      Plaintiff,

vs.

COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Corporation; COAST CITIES ESCROW, a Corporation; WESTERN SURETY COMPANY, a Corporation; ANN E. SKINNER, an individual;  and Does from 1 through 20, inclusive Defendants,

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: SACV 08-01274 DOC(MLGx)

**VERIFIED COMPLAINT FOR:**

**DAMAGES ARISING FROM RECORDATION OF FALSE DOCUMENTS;**
**REQUEST FOR JURY TRIAL**
ACTION FILED:  Nov. 7, 2008

## I.    JURISDICTION & VENUE:

**1-**    This court has original jurisdiction over this suit pursuant to U.S. Constitution art. 3, § 2 and 28 U.S.C. § 1332(a)(1) because the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, as required by 28 U.S.C. § 1332(a). Venue of this case is proper in the Central District of California, Southern Division, pursuant to 28 U.S.C. § 1391(a) because Defendant Commonwealth, and

1

defendant Western Surety, conduct business in this district and all or a substantial part of the events or omissions giving rise to the claim occurred in this district.

**2-**    This court also has supplemental jurisdiction on state cause of action pursuant to  28 U.S.C. § 1367.

## II.    **PARTIES:**

**3-**    Plaintiff Kareem Salessi ("**Plaintiff**" / "Salessi" / "I") is now, and at all times relevant to this Complaint was, the owner of an undivided interest in the real property commonly known as 28841 Aloma Ave., Laguna Niguel California ("**Property**"), with an Assessor's Parcel Number: 637-124-12 in the Orange County Hall of Records. Salessi is not an attorney, therefore, his pleadings must be liberally construed and on the basis of its merits.

**4-**    Defendant Commonwealth Land Title Insurance Company ("**Commonwealth**") is a Pennsylvania corporation authorized to do business in California and authorized to engage in, and at all times mentioned in this Complaint was engaged in, the title-insurance business as a title-insurance company.

**5-**    Defendant COAST CITIES ESCROW ("COAST") is, and at all times mentioned herein was, a corporation authorized to do business under the laws of California, and conducting such business in the County of Orange, California, and under the auspices of First Team Real Estate ("FIRST").

**6-**    ANN E. SKINNER ("SKINNER") is, and at all times mentioned herein was, an individual authorized to do business under the laws of California,

2

and conducting such business in the County of Orange, California, in the

employ of  COAST.

**7-**    Defendant Western Surety Company ("Surety") is an Illinois

corporation authorized to do business in California and authorized to

engage in, and at all times mentioned in this Complaint was engaged in

the business insuring errors and omissions, as a bonding company.

**8-**    Plaintiff is ignorant of the true names and capacities of the

defendants named in this complaint ("**Complaint**") as DOES 1 through 20,

inclusive, and therefore sues these defendants by such fictitious names.

Plaintiff will amend this Complaint to allege their true names and

capacities when such are ascertained.

**9-**    This allegations hereinunder arise from the creation, and the

subsequent tortuous breach, of a fraudulent unilateral Title Insurance

Policy issued by defendant Commonwealth under the instructions of Coast

Cities Escrow, and without the issuance of a mandatory preliminary title

profile of the property. The "TITLE POLICY" is integrated into this

complaint at the end of the complaint, and before the exhibits appear.

**10-**    Plaintiff is informed and believes, and thereon alleges, that at all

times herein mentioned, each of the named and each of the fictitiously-

named defendants (**"Defendants"**) was, and is, the agent, employee,

partner, and/or principal of the remaining Defendants, and jointly

participated in, and/or had knowledge of, and ratified the wrongful acts

alleged. In doing these acts, each of the Defendants was in the course and

scope of such Defendant's agency, partnership, and/or employment.

3

# III. NATURE OF THE CASE

**11-** On or about August 15, 2002, Salessi signed a conditional agreement to purchase the subject property of this lawsuit from Patrick F. Ortiz, and Debra M. Ortiz. The single-family house was located at 28841 Aloma Ave., Laguna Niguel, Ca. 92677 ("Aloma"/"Subject property"/"property"/"house"). The critical specifics of the house had been misstated to Salessi, or were not disclosed to, by Realtor Ali (Nick) Roshdieh, his broker Tom Abercrombie, the Ortizes, and other former defendants in OSC case # 04CC11080 ("Case #1), which ended with several dismissals and four judgments against four defendants **(Exhibit-A).**[1]

**12-** Century Funding had been intentionally, and secretively, withholding a loan originated by World Savings[2] until the extended escrow deadline expired. Thereafter the sellers, and their agent faxed a cancellation of the escrow to Salessi's broker, Tom Abercrombie **(Exhibit-B).** On or about 11/1/2002, Salessi signed this cancellation, which was dated 10/30/02, and handed it back to broker Tom Abercrombie who was to fax it back to the sellers' agent.

**13-** On 11/1/2002, believing that he was off the hook from the Aloma escrow Salessi revisited the agents of two other houses he had been

---

[1] **ALL THE EXHIBITS AND FOOTNOTES ARE INCORPORATED HEREIN WITH THIS REFERENCE.**
[2] **World Savings was bought by Wachovia Corporation which is now insolvent according to Citigroup's $80 Billion lawsuit of CITIGROUP v. WACHOVIA, 2008 WL 4542749 ¶6 CONFIMRING INSOLVENCY: "Had Citigroup not stepped up in this way, Wachovia would have failed the following day and the debt issued by its holding company would have collapsed, with potentially devastating implications for the stability and security of the financial markets. Wells Fargo had elected to turn its back and allow Wachovia to wither and die." (10/4/2008)**

**SALESSI v. COMMONWEALTH - COMPLAINT**          **FILED 11-7-2008**

interested in. One of these was in the city of Dana Point. Meantime, Salessi informed Peimani/Century Funding of the good news that the escrow had been cancelled on Oct. 30th, and that he could gladly use the World Savings loan for purchasing one of the other houses. Peimani became furious stating that it was impossible and that each loan origination is good for a specific house and that the loan could not be used for another house.

**14-**  I immediately discussed this matter with the Dana Point house agent who told me that Century Funding had been telling me nonsense, and to prove it he took me to a lending brokerage he worked with. The manager confirmed the agent's opinion. At this point I realized that Peimani had also acted dishonestly.

**15-**  Suddenly, and out of the blue, on, or about Nov. 3rd 2002 I received a phone call telling me that the World Savings loans had come through and that we should quickly arrange a final walk-through of the house.[3] To play the game, I did follow up with the purported walk through where agents refused to provide me the pest and termite inspection reports from defendants Southwood Pest Control.[4] The agents also did not provide me with the paid for, and contingent, appraisal report. I told them we no longer had a contract or open escrow, owing to the recent cancellation. They confirmed and further lied that the missing documents, plus the new escrow instructions and contract, would be all be given to me at the escrow office afterwards, and before the escrow closing.

---

[3]  At this time, and without referring to Case #1, my memory does not recall who called me with this loan information.
[4]  A judgment of $375,000. was awarded to me against Southwood on 9/26/2007, in Case #1.

**SALESSI v. COMMONWEALTH - COMPLAINT**          **FILED 11-7-2008**

**16-** On, or about Nov. 4th, 2002, I received a call from Ann E. Skinner ("Skinner") the manager, and notary public, of Coast Cities Escrow, which turned out to be the forgery arm of First Team Real Estate, which in turn came out to be a criminally organized real estate enterprise of Cameron Merage, its alter ego, sole owner and operator, who has defrauded thousands of Orange County home-buyers in the past decade. [5] By not responding to Request For Admissions (RFA) in Case #1, Merage, et al, conceded to have a "forgery department" within their enterprise dedicated to the forgery of deed and loan documents which they produced en mass.

**17-** Similar to the Merage forgery enterprise explained above, World Savings, and Wachovia, have admitted to have similar forgery departments in their enterprises, also by not responding to Request For Admissions which I propounded to them in this action. In addition, World Savings' extensive forgery operations center, in Oakland, California, has been documented by Paul Bishop, one of its former wholesale loan executives, in his recent lawsuit (Bishop v. World Savings) currently litigated in the Superior Court of Alameda County. In the words of Paul Bishop [P. 13; L. 16-21]:

> **"Indeed, forgeries were commonplace at the WORLD office where Plaintiff worked. It was a very common practice for PMB Representatives to find they were missing pages in a loan file that needed the borrower's signature. Rather than go through the hassle of chasing down the borrower the reps would cut the needed signature out of another document, tape it to the blank document, copy it and then fax it to himself as a signed copy."**

---

[5] "ENTERPRISE" as defined by RICO, 18 U.S.C. §§1961-1965 (Racketeer Influenced & Corrupt Organizations Act)

6

**18-** During the Nov. 4th telephone-call Skinner insisted that I had to bring my wife, Ladan Fonooni, to the escrow office to sign some consent form proving that she was not claiming to have any ownership interests in the subject property, Aloma. I recall protesting against this and telling her that it did not make any sense to me; that I would go there by myself and see what the form is, and then if necessary I would bring my wife, or have her sign the form and return it to them. Next, they resorted to World Savings which in turn had Century Funding call me emphasizing that Coast Citties Escrow had told them that without the consent agreement of my wife escrow could not proceed, so it would be imperative that I take my wife there personally the next day, Nov. 5th, 2002, when I was supposed to meet Skinner personally and receive all the missing documents, including the appraisal report, pest control reports, other disclosures which they had not formerly provided to me, in addition to new escrow instructions and a new contract, with which I expected to kick-off my renegotiation.

**19-** Meantime, Century Funding had told me that, and insisted that owing to the escrow cancellation the formerly signed, loan and escrow, documents had all become void, and that the bank had also instructed him and the escrow office to create a new contract and escrow instructions. However, the new escrow instructions, or the HUD-1 statement, which were supposed to be produced by World Savings were never produced. No new contracts were produced either. I had expected to receive the new purchase contract and escrow instruction documents at the escrow office before beginning to renegotiate my terms for entering into a new contract to buy the Aloma house.

**20-** Only after the expected delivery to me, or the above, and the missing contingent documents, was I willing to do a renegotiation on the price, assuming that the still missing documents did not disclose misrepresentations of material facts.[6] However, since providing me with the missing documents would have revealed the falsities of the subject property's size, age, and numerous other defects, all of which would have stopped me from purchasing it, they decided to bypass the entire process through a chain of forgeries. This is despite the fact that I still intended to modify the World Savings loan to purchase the Dana Point house, at that time trusting it to be an honest loan.

**21-** Merage's forgery enterprise, namely Coast Cities Escrow, set up the 11/5/02 meeting at their main office on Adams Avenue. Ann Skinner was absent (vacationing in Florida). Their staff, Karen Mitchell had been instructed to try to get whatever signatures she could from me and my wife to use for completion of their forgery operations. My wife's signature was forged on a recorded deed which is void, unless signed by me as the buyer. This was the "Preliminary Change of Ownership Report". This form was the second part of an unnecessary forged document called "Interspousal Transfer Grant Deed" which turned out to be the consent form they insisted to have my wife sign.

**22-** Years later I discovered that the former defendants had defrauded me and my wife to have her signature sample only to forge on the above mentioned property transfer form and in order to record of it with the

---

[6]  Such as the facts of the house which had been misrepresented as over SFT. 1,800. and built in 1982, as opposed to its true facts of SFT. 1,300. and built in 1971, in addition to it's infestations with structural pests, rodents & mold.

Orange County Assessor that the property transfer had been conducted legally. The forged form had been secretly recorded with the same document number as the Interspousal Transfer Form, but only with the County Assessor, and it is concealed as a non-public document. For the past six years the County Assessor has been concealing from me that this forged form (deed) was recorded with them in 2002. The above facts inculpates the County Assessor, and recorders' offices as integral parts of County-wide organized crimes in real-estate title and lending activities, where lenders, through title companies and their secret ties with paid operatives in the said county offices defraud the Orange County community on a massive scale, surreptitiously, invisibly, and as a routine clandestine operation.

**23-**   The additional details of forgeries which led to the creation of the fraudulent World Savings loans is documented in **(Exhibit-C)**[7]. In late October 2008 I found out about the correct sequence of escrow documents handling, and according to this finding I believe that Commonwealth Title Insurance ("Commonwealth") had not received any funding from World Savings before recording the forged documents. The reasoning behind this is based on several details applicable to every real estate escrow transaction, according to a 30 year escrow veteran:

   a. That the escrow documents are signed, notarized and
      acknowledged by all parties. These documents should include: the

---

[7]  The letter, dated 10-5-2008, to counsel for Commonwealth Title Insurance in the midst of a stayed ADR process.

**SALESSI v. COMMONWEALTH - COMPLAINT**          **FILED 11-7-2008**

loan documents signed by buyers (i.e.: Salessi); the grant deed signed by sellers (i.e.: Ortizes);

b. The notes and other documents are physically sent to the lender (i.e.: World Savings), which proof-reads the documents, calls the title company and asks them if they are ready to receive funds; If so, they wire funds to the title company who holds the funds until the other pending documents are received, processed and recorded-this process usually takes a few days; if all is well the lender calls the escrow and asks if they are ready for funding; if yes, lender emails, or faxes, to escrow the funding dollar amount;

c. title insurance company (i.e.: Commonwealth) receives the deeds of trust, plus the grant deed, of the property from escrow (i.e.: Coast Cities Escrow) which instructs the title company to "ABSTRACT" (i.e.: examine) the documents and hold them until further instructions.

d.  Title insurer examines the documents to make sure: that the spelling of the sellers' names (i.e.: Ortizes) and the buyer's name (ie: Salessi) are correct on the grant deed; that the notarizations and the acknowledgments on all the documents are correct; that the "PRELIMINARY CHANGE OF OWNERSHIP REPORT" is properly signed by the buyer, notarized and acknowledged by proofreading the notary's stamp and her signature (i.e.: Skinner).

e. All of these observations would halt any honest title company from proceeding any further:

1- Incorrect spelling of seller's names, as on the grant deed;

2- false notarization, or acknowledgements (as in the forged signatures of Ann E. Skinner, as notary);

3- the signing of the "PRELIMINARY CHANGE OF OWNERSHIP REPORT" by anyone other than the buyer (ie:Kareem Salessi);

4- any other indications of forgeries, or discrepancies in the date of documents to be recorded, such as the false dates on the grant deed, or the forged signatures of Ortizes, both detectable by even untrained eyes.

f. Assuming that all has gone legally and correct, escrow calls the title insurer and asks to look for a particular wire transfer from the lender (i.e.: World Savings) with the exact amount that the lender had informed the escrow of. If all else is good, then escrow authorizes the title company to record the documents. Upon the completely legal recording title passes to the buyer (ie.: Salessi), and escrow is considered closed (i.e.: on11/7/08).

24-   In this fraudulent transaction, between my departure form the Coast Cities Escrow office and the recorders' stamps shown on the four consecutive documents, only 48 hours had elapsed, during which time I had already realized I was being defrauded. Thereupon, I contacted Coast Cities Escrow multiple times by phone, and by fax, instructing them not to cash my checks and to withdraw my tentative signatures and agreements, which were pending the proper closing of escrow. Tentative signatures had been for the Ortizes' proposed rent back agreement, which their agent denied afterwards, thus voiding that also.

11

**25-** In the instant case, or Case #1, due to the countless forgeries, each of which resulted in one, or more violations of California's Penal Codes §§115.5; 470-480, et seq. the escrow never opened, and it never closed. Further the title to the property never passed to me and all the funds deposited by me, either with Coast Cities Escrow, or with World Savings, must be were converted, and in violation of, inter alia, Penal Code §484, grand theft, in addition to the violations of CC §3439, Fraudulent Transfer.

**26-** From the speed of events in the above transaction, during November the 5th, through Nov. the 7th, of 2002, it appears to me that one of the following occurred with the loan documents which came into the possession of World Savings:

    **a.** That Coast Cities Escrow mailed World Savings notes signed with my forged signatures; similar to those on another undated document they had created to steal $1000. of my escrow funds, and to fabricate that I had extended the escrow; **OR:**

    b. That World Savings forged my signatures on the notes, as a routine act of forgery, as quoted above from Paul Bishop. **OR:**

    c. That possible, formerly-singed but expired, loan documents were replaced for new ones;

**27-** Not having discovered the scheme that defendants had performed on cheating him Salessi erroneously began and continued to pay mortgage bills until August of 2007 when he informed by telephone, and in writing, the World Savings legal department in San Antonio, Texas, as well as their local counsel who was representing them in Case #1 at the time. Once

12

again they failed to act. They failed to act because they had always the bank had at all times been a part, and benefactor, of the frauds.

**28-**   In October of 2007, immediately upon receiving the first written expert testimony on the forgeries of the Ortiz signatures on the grant deed, and that of my wife's signature on the "Preliminary Change of Ownership Report" I forwarded same to Mr. Douglas Farrell, counsel for Commonwealth. Mr. Farrell questioned the expert's testimony and his qualifications and hired his own expert, whom I believe confirmed the findings on the said forgeries. Commonwealth did not disclose its findings to me, their insured, which was in itself a violation of California Insurance statutes.

**29-**   With much further pain and expense I searched for a court-certified expert whereupon I found Ms. Eval Salzer, a long time veteran of questionable document examination. I informed Mr. Farrell of her name, to see if he approved her, which he did by stating that she was well known and that he had heard about her. I retained her for the work and her findings report is attached herein as included in **(Exhibit-D).** At this time I had not yet suspected that even Ann Skinner's notary signatures had been forgeries.

**30-**   After receiving Ms. Salzer's certifications I visited the Orange County Recorder's Office where I presented Ms. Salzer's findings to Ms. Terri Nissen, Senior Recording Supervisor, and asked her to take some action in investigating and enforcing the recording laws, particularly of California's Penal Code §115.5 against Coast Cities Escrow, et al. Ms. Niessen took the documents and passed them on to Mr. Tom Daly, the Orange County

13

Clerk-Recorder, whose name appears on every recorded document in Orange County. Dated January 16, 2008, Ms. Nissen sent me a letter, also included in **(Exhibit-D),** explaining that they took no responsibility for recording forged documents, and that they forwarded my documents to the District Attorney's Office ("OCDA").

**31-**  I diligently followed the matter with OCDA who reverted the matter to the OC-Sheriff office with whom I had filed my original crime report number 06-058562, in March of 2006, during the heat of the Case #1 litigation. At that time I had become suspicious that a certain OC-Sheriff investigator (Doe #1) had been paid off by Cameron Merage, or his associates-in-fact, to kill my at all costs. OCDA sounded also frustrated and stonewalled by the same investigator's supervisor. In, or around, September 2008, I talked to an OCDA director of economic crimes unit and reported the matter with names. The director promised to investigate and revert to me within a week but that never happened, as two months already passed. Meantime:

**32-**  In February of 2008, at the Orange County Recorder's Office, when I obtained a certified copy of Ann Skinner's notary bond, issued by defendant Western Surety Company, I realized that they also certify the likeness of notary's signatures on individual documents, for a fee of $13. Therefore, I asked them to certify that Skinner's signature on my grant deed, and the "Interspousal Transfer Grant Deed" had been similar to her signatures on her bond. The staff found them to be very different, whereupon the sections manager was consulted and several other supervisors and staff gathered to compare the signatures and eventually their manger told me that the signatures were definitely not alike (i.e. They

14

were forgeries), but that they could not give me a certification stating that they were not alike, that they could only certify likeness, not the reverse.

**33-** Upon this refusal to certify, I asked them why they were not enforcing pertinent penal codes, particularly of PC §115.5, which they had never heard of. A supervisor pulled off a Westlaw code book from the shelves, found the penal code section and read it out loud, but excusing their office from enforcing it. I told her that in every other recorder's office I had visited large posted warning signs with this code section warn the public that it is a felony to have a false document recorded, and that it was a disgrace that they had not even heard of it, which must be because their office was an integrated part of these crime frauds of forgeries, as without their recordation and their refusal to prevent frauds they become accomplices. Ms. Nissen had told me that if any forged recorded documents were to be expunged the order/s must come from a court, and that they could not do anything about it on their own, even if they were certain of the forgeries.

**34-** The about statement of the OC-Recorder sounded outright criminal to me. After the finding of the Skinner signatures being forgeries, I contacted the counsel for Commonwealth to take some action to expunge the forged documents; however, he denied that his client had any such duties to act, and conceded only to initiate an arbitration which followed with JAMS, and is currently on stay. On 3/12/08, I brought an ex parte motion in Case #1 to expunge the forged documents, however, the court stated it had no jurisdiction and that I had to file a new lawsuit for the expungement, and to prevent a wrongful foreclosure proceeding which World Savings had

15

initiated by recording a "Notice of Default and Election to Sell" on 12/31/2008.

**35-** On the above date I met the new counsel, for World Savings, Mr. Christopher Carr, Esq. who became aware of the forgeries and that I had to file a new lawsuit as the judge in case #1 had stated, unless their client took some immediate action to mitigate the matter. I had a couple of email exchanges with Mr. Carr, who seemed to be an honest attorney-which is a rare finding, and provided Mr. Carr the transcript of the October 2007 hearings which led to my prevailing in Case #1 with judgments of $75,000. against their bank client's agents; and two judgments of $375,000. against two inspectors. From the jest of his final response it seems that Mr. Carr attempted to talk the bank into taking some positive action but that the bank had refused to do so and that he had given up.

**36-** In the meantime I had contacted World Savings foreclosure department and told them about the forgeries, and faxed and/or mailed them the pertinent documents. They had responded by passing me on to their legal department, which turned out to be a Mr. Michael Goldberg, esq. the same character who, in 2005, had filed some false declarations, under the penalty of perjury, in furtherance of aiding and abetting World Savings in the evasion of service of process for over a year. Further, Mr. Goldberg had falsified that World Savings had no "Appraisal Department" even though the real-evidence of its existence was among the complaint's exhibits (i.e.: pictures of its office sign which included its street address). Their appraisal department was an underground forgery operation which moved offices frequently to evade detection and lawsuits, and for other

fraudulent purposes. Eventually in his letter of March 2008 Mr. Goldberg promised to investigate the forgery matters.

**37-** I had been in sporadic contact with Mr. Goldberg's office, as well as with the foreclosure department. The latter had telephonically told me that the foreclosure had been halted due to legal department's investigations and that no trustee sale date had been planned. This was during May of 2008. However, this information had been false as they posted a "NOTICE OF TRUSTEE SALE" on the front door of the house on 3/21/2008, for a sale date of June 5, 2008, thus violating inter alia, CC §2924, notwithstanding the falsities of the fraudulent loan documents they were using to foreclose with. In the lawsuit that followed (Case #2) an associate of Mr. Carr, namely Mr. Hickman, esq. falsified some declarations that the posting had been done on May 15th, 2008, in order to subvert the said statute. The court was aware of the above falsification but was, clearly, and illegally influenced by Mr. Hickman, or other agents and assigns of Wachovia, which was now appearing as the successor of World Savings. As a result of the illegal influence on the Case #2 court I was denied a preliminary injunction, and my case was killed at inception without allowing me to amend even once, and as a matter of right.

**38-** Throughout the above process I pleaded to Commonwealth, and to the JAMS arbitration, to mitigate my damages by some type of interventions, however, both denied my petitions.

**39-** The Western Surety, had already in March-April of 2008 informed me that they will not pay out anything on Skinner's bond unless, and until, I sue them directly. Their claims manager also told me that Coast Cities'

17

counsel have promised to defend the bonding company also once such a

new lawsuit is filed, which in itself amounts to a criminal conspiracy.

**40-**   Eventually, upon the denial of my preliminary injunction on 7/15/2008,

during a staged sham auction outside the Santa Ana court-house Mr.

Hickman, esq., and on behalf of Wachovia, unlawfully repossessed the

house for a credit bid of less than $90,000. whereafter they recorded a

new fraudulent "TRUSTEE'S DEED UPON SALE" with the same entity,

namely the OC-Recorder, which I believe is the hub, and bread and butter,

of real estate and mortgage frauds.  Once this was recorded, a document

provided by OC-Recorder archives surfaced **(Exhibit-E)** which proved that

in November of 2002, the title had never passed to me, Kareem Salessi.

**41-**   Thus, in 2002 as the actual result of the frauds of these defendants, I

had only received what is called "COLLAR OF TITLE" while all the parties

to fraud had been fully aware of this, most importantly Commonwealth

which has direct access to OC-Recorder's database as well as a huge

pool of data called "TITLE PLANT", where title insurers pool their own

much more extensive information on each property's title, including details

on what documents they have forged to steal titles of property from the

rightful owners, namely by issuing fraudulent title insurance policies, as a

form of organized crime protection to, criminals who make their dishonest

livings on defrauding people from property real estate.

**42-**   Because real estate can't be stolen by carrying away, or be hidden

away, like everything else, the only means of executing such thefts is

through falsification of documents, and then recording them in order to

legitimize them, despite the fact that by statute, including inter alia CC

18

§1227 such documents are void ab intio. However, if the injured party is not around, or is disabled, or does not discover the frauds within a short time, and before the 'STATUTES OF LIMITATIONS" expire, the theft becomes legitimized. My extensive research into the practices of title insurance companies, and banks, resulted in concluding that these two groups have formed the strongest organized crime network in this country, the result of which we have seen in a short time, namely the theft of several million houses, under the disguise of foreclosures, and the plunder of several trillion dollars of public funds, nationally and oversees.

**43-**   The above onslaught on me and my family continued by Wachovia's filing of an "UNLAWFUL DETAINER ACTION" the filing of which itself was criminal, considering all the criminal acts which had lead them to that point. Once again I pleaded to Commonwealth counsel to take action and defend my title, but once again they refused and left me, and my family in the cold. I filed a notice of removal of that action (Case #3) to the "FEDERAL DISTRICT COURT" in Santa Ana, which is currently under consideration for jurisdiction, by the Honorable Cormack J. Carney.

**44-**   As a result of the false and forged Grant Deed from Ortizes to Salessi and false and forged WOSB/GOWS Deeds of Trust, these instruments are void as a matter of law and the First and Second WOSB/GOWS Deeds of Trust do not, and never did constitute liens or security for the indebtedness represented.

## COUNT ONE:

19

## FOR PREPARATION & RECORDATION OF FALSE DOCUMENTS

### SALESSI v. Commonwealth, Skinner, Coast Cities Escrow:

**45-** The general allegations and the allegations contained in all the above paragraphs, inclusive are incorporated in this cause of action.

**46-** Defendants, without Plaintiff's knowledge or consent, recorded at least two forged Grant Deeds, and at least two Forged Deeds of Trust, on November 7, 2002. The said Deeds had been forged by defendants.

**47-** All the signatures, and mandatory details, appearing on the Aloma property's GRANT-DEED are forgeries. These forgeries include, but are not limited to, the following material items each of which items, on its own, rendered the GRANT-DEED null and void by the operation of law, as of the date of recording by Commonwealth, on 11/7/2002:

    a. the purported signatures of Patrick Ortiz (a fictitious name);

    b. The purported name of seller Patrick Ortiz, who does not exist;

    c. the purported signature of Debbie Ortiz (a fictitious name);

    d. the purported name of seller Debbie Ortiz, who does not exist. The true names of the purported grantors were Patrick F. Ortiz and Debra A. Ortiz;

    e. notary acknowledgement of defendant Skinner who was in Florida on the date of acknowledgement;

    f. notary stamps and signatures purportedly of Ann E. Skinner, Coast's manager, are all forgeries, evident even to untrained eyes, and in comparison to her signatures on her notary oath, and bond.

g. The Assessor's Parcel Number **637-124-012** is false;

h. The dates appearing as the date document created and the date executed are in reverse order and render the deed void by itself.

**48-** As a result of the above detailed forgeries the forged Grant Deed did not pass legal title to Plaintiff Salessi, and as such legal title still remains in the names of defendant Ortizes, as in when they purchased the property in 1997 with the Grant-Deed.

**49-** The subject property forged Grant Deeds is void, in the Salessi case: A **forged** deed is completely void and ineffective to transfer any title to the grantee.[8]   A subsequent title derived through a forged instrument is completely unenforceable, even if recorded and held by a bona fide purchase**r**.[9]  Therefore, as a matter of law the Grant Deed from the Ortizes purporting to grant title to Salessi is completely void and the Ortizes must be ordered to deliver to plaintiff a legally acknowledged, and notarized, Grant Deed, signed, notarized and acknowledged at plaintiff's presence. In the alternative, the court should issue a judicial fee title in plaintiff Salessi.

**50-** In short, the suppressed material facts which now lead to the void nature of the property instruments are, but not limited to, the following:

a. Salessi Grant Deed:

-        Patrick and Debra Ortiz did not execute the Salessi grant deed: and:

---

[8]  Wutzke v. Bill Reid Painting Service, Inc. (1984) 151 Cal.App.3d 36, 43 [198 Cal.Rptr. 418]; Forte v. Nolfi (1972) 25 Cal.App.3d 656, 674 [102 Cal.Rptr. 455] (note and deed of trust); West's Key Number Digest, Deeds ☜56(5), 70, 196(2), 211(3) [Miller & Starr: § 8:53. Forgery].
[9] AS ABOVE

21

**SALESSI v. COMMONWEALTH - COMPLAINT**          **FILED 11-7-2008**

- Ann Skinner's certification, acknowledgment and notarization of Patrick and Debra Ortiz signatures is false.
- Ann Skinner's notary stamp usage by anyone else was itself felony and rendered the notarized document void by law;
- Ann Skinner's signature appearing on the Grant Deed is false;
- Commonwealth certification of Ann Skinner's signature and notary stamp is false;

b. Salessi Purchase Money Loans:

- Salessi did not execute, or deliver, any purchase money notes;
- Salessi did not deliver the purchase money Deeds of Trust; Skinner was in Florida on 11/5/2002, the date of her purported notarizations and acknowledgments of the Deeds of Trust;
- Ann Skinner's certifications, acknowledgments and notarizations of plaintiff Salessi's signatures are false.
- Commonwealth certification of Ann Skinner's signature and notary stamps are false;

51- Plaintiff was ignorant of the falsity of such representations and concealments and suppression of the true material facts. Plaintiff would not have delivered a $40,000. cashier's check to Coast Cities Escrow had

22

he known of defendants' plans to convert that money and additional funds in an already cancelled escrow. Further, plaintiff was ignorant that defendants had already converted $1,000. of plaintiff's good faith deposit funds, in their escrow fiduciary, and that escrow had paid it to the Ortizes by forging plaintiff's signatures on a typed letter fax-dated 10-18-2002.

**52-** .*Uniform Vendor and Purchaser Risk Act, Civil Code §1662* was severly violated by these defendants at this juncture, whereupon defendants by, inter alia, the way of this statute assumed complete risk of loss, and risks of the wrongs that had taken place. The Act reads in concise language:

> *"Title to deposits determines when a creditor can acquire a lien on money or property a debtor will receive at the close of escrow or when a commission or other demand may be paid from proceeds. Until title passes, the money is still the buyer's money and the property is still the seller's. Thus a creditor of the buyer cannot acquire a lien on the property and the creditor of the seller can not reach the purchase money until the escrow closes."*

**53-** Therefore, WOSB never acquired a legal, or equitable, lien on the predatory loans it prematurely delivered to escrow, and without execution. Thus, WOSB never acquired a lien on the subject property, it gave up funds at own risk. Although WOSB's Trust Deeds were insured by the same title company, since they are complicit in the wrong that occurred, they have refused to resort to their purported title insurance policy.

**54-** In the instant case there was no pending escrow, as it had been cancelled in   writing; plaintiff's forged signatures, on the 10-18-2002 letter, did not renew or extend the cancelled escrow; plaintiff never received title,

23

as the Grant Deed is forged. By the above acts these defendants also created two forged trust deeds as stated bellow:

**55-   A trust deed that is based on a forgery, is void:** "There is no question that a forged document constitutes a nullity and as such, cannot provide the basis for a superior title as against the original grantor.[10] This is true for a deed, <u>or deed of trust,</u> or any conveyance following a transfer based on a forged document. "Since a trust deed obtained by means of forgery is void, it follows that any claim of title flowing from such a deed is void. This elementary legal principle makes clear the validity of the title of a subsequent purchaser or encumbrancer depends upon the validity of his grantor's title." See *Wutzke, supra.* This is true even against a bona fide purchaser or encumber, assuming that the bank defendants had played no part in the perpetrated frauds. Id. *Wutzke.*

**56-   T**herefore, based on California, and Federal, statutes and case law, establishing that plaintiff need not make any payments to lenders, plaintiff rightfully stopped making payments to defendants.  Had it been a different scenario plaintiff may have been unjustified to stop payment as in.

**57-   <u>Scope of Relief pierces boundaries of equitable lien</u>:** In ordering cancellation, the court may require the plaintiff to do equity. For example, if the defendant conferred benefits on the plaintiff, the plaintiff may be required to return them.[11] This rule does not apply when the instrument to be canceled was obtained by fraud in the execution. In that event, there is no contract under which the defendant can claim expenditures or part

---

[10] *Wutzke v. Bill ReM Painting Service, Inc.* (1984) 15t Cal.App.3d 36, 43)" *Handy v. Shiells* (1987) 190 Cal.App.3d512,517.
[11] Henry v Phillips (1912) 163 C 135, 124 P 837

24

performance.[12] This situation is parallel with the Salessi case, also: The plaintiff is not held to a standard of precaution or hypothetical reasonableness. A gullible or ignorant plaintiff can recover from a defendant who took advantage of this weakness even though a person of normal intelligence would not have been misled.[13]

**58-**   Where the loss or embezzlement is caused or aided by the act or negligence of the grantor or some other party, it must bear the loss even though title to the money remains with the buyer.[14] The described acts of all the defendants in their individual, or in their agency, capacity/s amounted to actual fraud, fraud in the execution, or fraud in the inception, which caused all the resulting documents to be void, by the operation of law.

**59-**   Further, *California Government Code § 8214.2* pertains to fraud relating to deeds of trust; single-family residence; as a felony and reads in concise language:

(a) A notary public who knowingly and willfully with intent to defraud performs any notarial act in relation to a deed of trust on real property consisting of a single-family residence containing not more than four dwelling units, with knowledge that the deed of trust contains any false statements or is forged, in whole or in part, is guilty of a felony.

(b) The penalty provided by this section is not an exclusive remedy and does not affect any other relief or remedy provided by law.

---

[12] *Fleming v Kagan (1961) 189 CA2d 791, 797, 11 CR 737.*
[13] Cortez v Weymouth (1965) 235 CA2d 140, 45 CR 63.
[14] Majors v. Butler (1950) 99 Cal.App.2d 370, 374 [221 P.2d 994]. See Crum v. City of Los Angeles (1930) 110 Cal.App. 508, 514 [294 P. 430].

25

**60-**  <u>But for</u> the frauds, and/or, the reckless disregard of legal processes above the said documents would not have been wrongfully, and fraudulently, forged, executed and recorded, and thus plaintiff Salessi would not have been deceived into taking possession of an infested, and undesirable house, for double its true value at the time, and that Salessi and his family would not have suffered insurmountable emotional, physical, and financial harms as they did owing to the misconducts of these defendants. The aforementioned pain and sufferings and financial harms have continued, and escalated, for exactly six years.

**61-**  The acts of Defendants were malicious, oppressive, fraudulent, and despicable and justify the awarding of punitive damages according to proof at time of trial.

**62-**  The As a proximate result of the defendants' wrongful conduct, plaintiff has been damaged and will be damaged in an amount to be determined at a jury at trial, but is in excess of $75,000.

///
///

///

26

**SALESSI v. COMMONWEALTH - COMPLAINT**          **FILED 11-7-2008**

## COUNT TWO:

## FOR STATUTORY, AND NON-STATUTORY, BOND DAMAGES

## SALESSI v. WESTERN SURETY COMPANY:

**63-** Plaintiff herein realleges and by reference incorporates herein each and every allegation of the above paragraphs of this Complaint as if set forth in full herein.

**64-** Defendant surety executed its official bond (Bond No. 1325672) as surety for and on behalf of defendant Skinner, as notary public, in the specific sum of $15,000., for each incident of false notarization, and in accordance with the requirements of Government Code § 8212. Bond was given to assure the faithful performance of the official duties of defendant notary as notary public. A bond with a four year term was executed on or about October 26, 2001, and was in full force and effect during November 2002, when the documented forgeries occurred. A true and correct copy of the bond is attached hereto as **(Exhibit-F)** and incorporated herein by this reference. Also a true copy of Ann Skinner's Notary Oath is attached to the said exhibit, and is incorporated herein, for comparison of her true signatures with her signatures forged by Karen Mitchell, and or, other Coast Cities Escrow defendants.

**65-** Upon the occurrence of a fraudulent notarization, Defendant Surety Bonding is contractually obligated to pay the victim of such fraud, the sum of $15,000. for each incident (i.e.: document) falsely notarized. Thus four falsely notarized and recorded documents as in here amount to an actual

27

amount of $60,000. to be indemnified by this defendant according to the California Statute.

**66-**  In this case the duty of Defendant notary Skinner was established by statute, namely Civil Code §1185. Defendant Skinner conceded the violation of this duty by admitting not to have been in California when the fraudulent acknowledgments were forged by the Coast defendants. This violation created a liability upon the notary's surety. However, defendant Surety refused payment, despite having received proof of Skinner's wrongs and of plaintiff's damages and proof of monetary judgments received against other defendants, rendering plaintiff prevailed in OSC # 04CC11080.

**67-**  On, or about, February 7, 2008, plaintiff initiated a claim with the defendant Surety and followed up with over two months of communications and by supplying them with extensive information. At the end the Surety denied plaintiff's claim and thus became further liable to plaintiff for insurance bad faith, per inter alia, <u>California Insurance Code § 790.3, et seq.</u> The untimely denial of the Surety caused plaintiff to have to now succumb to an unlawful trustee sale by Wachovia. Had Surety paid its statutory liabilities timely it would have cut off its further liabilities to plaintiff and would not have become further liable for insurance bad faith, and now exposed to unlimited liabilities.

**68-**  The amount of damage suffered by plaintiff far exceeds the amount of the bond. As a proximate result of the false and fraudulent notarization purportedly by, or by the subornation of Defendant Skinner, Salessi has

**SALESSI v. COMMONWEALTH - COMPLAINT**          **FILED 11-7-2008**

been damaged in the amount far exceeding $60,000, and will seek such

other damages from Surety.

**69-**  WHEREFORE, Plaintiff prays for judgment against Defendants, and

each of them, on each corresponding cause of action to that defendant, as

follows:

**70-**     For statutory damages according to proof;

**71-**     For special damages according to proof;

**72-**     For general damages according to proof;

**73-**     For costs of suit;

**74-**     *For prejudgment interest*;

**75-**     *For punitive damages according to proof;*

**76-**     *For attorney fees*; and:

**77-**     For any other and further relief as the court may deem just and
proper under the circumstances.

I, plaintiff Kareem Salessi, am the petitioner in the above-entitled proceeding. I have
drafted the foregoing petition and know the contents to be true of my own knowledge,
except as to those matters that are therein alleged on information and belief, and, as to
those matters, I believe to be true.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Dated: Nov. 7, 2008                      Kareem  Salessi,
                                         Plaintiff,

29

ISSUED BY
COMMONWEALTH LAND TITLE INSURANCE COMPANY

**HOMEOWNER'S POLICY OF TITLE INSURANCE FOR A ONE-TO-FOUR FAMILY RESIDENCE**



# Commonwealth
A LANDAMERICA COMPANY

## OWNER'S INFORMATION SHEET

Your Title Insurance Policy is a legal contract between You and Us.

It applies only to a one-to-four family residence and only if each insured named in Schedule A is a Natural Person. If the Land described in Schedule A of the Policy is not an improved residential lot on which there is located a one-to-four family residence, or if each insured named in Schedule A is not a Natural Person, contact Us immediately.

The Policy insures You against actual loss resulting from certain Covered Risks. These Covered Risks are listed beginning on page 2 of the Policy. The Policy is limited by:

- Provisions of Schedule A
- Exceptions in Schedule B
- Our Duty To Defend Against Legal Actions on page 2
- Exclusions on page 3
- Conditions on pages 3 and 4.

You should keep the Policy even if You transfer Your Title to the Land.

If You want to make a claim, see paragraph 3 under Conditions on page 3.

You do not owe any more premiums for the Policy.

This sheet is not Your insurance Policy. It is only a brief outline of some of the important Policy features. The Policy explains in detail Your rights and obligations and Our rights and obligations. Since the Policy - and not this sheet - is the legal document,

### YOU SHOULD READ THE POLICY VERY CAREFULLY.

If You have any questions about Your Policy, contact:

COMMONWEALTH LAND TITLE INSURANCE COMPANY
101 GATEWAY CENTRE PARKWAY, GATEWAY ONE
RICHMOND, VIRGINIA 23235-5153

### TABLE OF CONTENTS

|  | Page |
|---|---|
| OWNER'S COVERAGE STATEMENT | 2 |
| COVERED RISKS | 2 |
| OUR DUTY TO DEFEND AGAINST LEGAL ACTIONS | 2 |
| SCHEDULE A | Insert |
|   Policy Number, Premium, Date and Amount | |
|   Deductible Amounts and Maximum Dollar Limits of Liability | |
|   Street Address of the Land | |
|   1. Name of Insured | |
|   2. Interest in Land Covered | |
|   3. Description of the Land | |
| SCHEDULE B – EXCEPTIONS | Insert |
| EXCLUSIONS | 3 |
| CONDITIONS | 3 |
|   1. Definitions | 3 |
|   2. Continuation of Coverage | 3 |
|   3. How to Make a Claim | 3 |
|   4. Our Choices When We Learn of a Claim | 3 |
|   5. Handling a Claim or Legal Action | 4 |
|   6. Limitation of Our Liability | 4 |
|   7. Transfer of Your Rights to Us | 4 |
|   8. Entire Contract | 4 |
|   9. Increased Policy Amount | 4 |
|   10. Severability | 4 |
|   11. Arbitration | 4 |

**COMMONWEALTH LAND TITLE INSURANCE COMPANY**



By: *Janet A. Alpert*
President

Attest: *Wm. Chadwick Perrine*
Secretary

## OWNER'S COVERAGE STATEMENT

This Policy insures You against actual loss, including any costs, attorneys' fees and expenses provided under this Policy, resulting from the Covered Risks set forth below, if the Land is an improved residential lot on which there is located a one-to-four family residence and each insured named in Schedule A is a Natural Person.

Your insurance is effective on the Policy Date. This Policy covers Your actual loss from any risk described under Covered Risks if the event creating the risk exists on the Policy Date or, to the extent expressly stated, after the Policy Date.

Your insurance is limited by all of the following:

- The Policy Amount shown in Schedule A
- For Covered Risk 14, 15, 16, and 18, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A
- Exceptions in Schedule B
- Our Duty To Defend Against Legal Actions
- Exclusions on page 3
- Conditions on pages 3 and 4.

## COVERED RISKS

The Covered Risks are:

1. Someone else owns an interest in Your Title.
2. Someone else has rights affecting Your Title arising out of leases, contracts, or options.
3. Someone else claims to have rights affecting Your Title arising out of forgery or impersonation.
4. Someone else has an easement on the Land.
5. Someone else has a right to limit Your use of the Land.
6. Your Title is defective.
7. Any of Covered Risks 1 through 6 occurring after the Policy Date.
8. Someone else has a lien on Your Title, including a:
   a. Mortgage;
   b. judgment, state or federal tax lien, or special assessment;
   c. charge by a homeowner's or condominium association; or
   d. lien, occurring before or after the Policy Date, for labor and material furnished before the Policy Date.
9. Someone else has an encumbrance on Your Title.
10. Someone else claims to have rights affecting Your Title arising out of fraud, duress, incompetency or incapacity.
11. You do not have both actual vehicular and pedestrian access to and from the Land, based upon a legal right.
12. You are forced to correct or remove an existing violation of any covenant, condition or restriction affecting the Land, even if the covenant, condition or restriction is excepted in Schedule B.
13. Your Title is lost or taken because of a violation of any covenant, condition or restriction, which occurred before You acquired Your Title, even if the covenant, condition or restriction is excepted in Schedule B.
14. Because of an existing violation of a subdivision law or regulation affecting the Land:
   a. You are unable to obtain a building permit;
   b. You are forced to correct or remove the violation; or
   c. someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.
   The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
15. You are forced to remove or remedy Your existing structures, or any part of them - other than boundary walls or fences - because any portion was built without obtaining a building permit from the proper government office. The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
16. You are forced to remove or remedy Your existing structures, or any part of them, because they violate an existing zoning law or zoning regulation. If You are required to remedy any portion of Your existing structures, the amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
17. You cannot use the Land because use as a single-family residence violates an existing zoning law or zoning regulation.
18. You are forced to remove Your existing structures because they encroach onto Your neighbor's Land. If the encroaching structures are boundary walls or fences, the amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
19. Someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it because Your neighbor's existing structures encroach on the Land.
20. You are forced to remove Your existing structures because they encroach onto an easement or over a building set-back line, even if the easement or building set-back line is excepted in Schedule B.
21. Your existing structures are damaged because of the exercise of a right to maintain or use any easement affecting the Land, even if the easement is excepted in Schedule B.
22. Your existing improvements (or a replacement or modification made to them after the Policy Date), including lawns, shrubbery or trees, are damaged because of the future exercise of a right to use the surface of the Land for the extraction or development of minerals, water or any other substance, even if those rights are excepted or reserved from the description of the Land or excepted in Schedule B.
23. Someone else tries to enforce a discriminatory covenant, condition or restriction that they claim affects Your Title which is based upon race, color, religion, sex, handicap, familial status, or national origin.
24. A taxing authority assesses supplemental real estate taxes not previously assessed against the Land for any period before the Policy Date because of construction or a change of ownership or use that occurred before the Policy Date.
25. Your neighbor builds any structures after the Policy Date – other than boundary walls or fences – which encroach onto the Land.
26. Your Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.
27. A document upon which Your Title is based is invalid because it was not properly signed, sealed, acknowledged, delivered or recorded.
28. The residence with the address shown in Schedule A is not located on the Land at the Policy Date.
29. The map, if any, attached to this Policy does not show the correct location of the Land according to the Public Records.

## Our Duty To Defend Against Legal Actions

We will defend Your Title in any legal action only as to that part of the action which is based on a Covered Risk and which is not excepted or excluded from coverage in this Policy. We will pay the costs, attorneys' fees, and expenses We incur in that defense.

We will not pay for any part of the legal action which is not based on a Covered Risk or which is excepted or excluded from coverage in this Policy.

We can end Our duty to defend Your Title under paragraph 4 of the Conditions.

**This Policy is not complete without Schedules A and B.**

We can end Our duty to defend Your Title under paragraph 4 of the Conditions.

# SCHEDULE A

Policy No.: 2207951-1                                      Premium: $1,329.00

Policy Amount: $443,000.00          Policy Date (and Time):  November 7, 2002 at 4:19 p.m.

Deductible Amounts and Maximum Dollar Limits of Liability for Covered Risk 14, 15, 16 and 18:

|  | Your Deductible Amount: | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 14: | 1% of Policy Amount<br>or<br>$2,500.00<br>(whichever is less) | $10,000.00 |
| Covered Risk 15: | 1% of Policy Amount<br>or<br>$5,000.00<br>(whichever is less) | $25,000.00 |
| Covered Risk 16: | 1% of Policy Amount<br>or<br>$5,000.00<br>(whichever is less) | $25,000.00 |
| Covered Risk 18: | 1% of Policy Amount<br>or<br>$2,500.00<br>(whichever is less) | $5,000.00 |

Street Address of the Land: 28841 Aloma Avenue, Laguna Niguel, California

1.      Name of Insured:  Kareem Salessi

2.      Your interest in the Land covered by this Policy is:  A FEE

3.      The Land referred to in this Policy is described as:

SEE EXHIBIT "I" ATTACHED HERETO AND MADE A PART HEREOF

Commonwealth Land Title Insurance Company

By:  _____

## EXHIBIT "I"

Lot 63 of Tract No. 7340, in the City of Laguna Niguel, as shown on a map recorded in book 280, page(s) 1 to 4 inclusive, of Miscellaneous Maps, in the office of the County Recorder of said County.

# SCHEDULE B

In addition to the Exclusions, You are not insured against loss, costs, attorneys' fees, and
expenses resulting from:

A.      Property taxes, including general and special taxes, personal property taxes, if any,
and any assessments collected with taxes, for the fiscal year 2002 - 2003.

| | | |
|---|---|---|
| First Installment: | $1,207.33 | Paid |
| Second Installment: | $1,207.33 | Open |
| Penalty (including cost): | $0.00 | |
| Land Value: | $177,090.00 | |
| Improvement Value: | $66,105.00 | |
| Homeowner's Exemption: | $7,000.00 | |
| Code Area: | 29-057 | |
| Assessment No.: | 637-124-12 | |

1.      Covenants, conditions and restrictions as set forth in the document

Recorded:          in book 9638, pages 854, Official Records

NOTE: This exception omits any covenant, condition or restriction based on race, color,
religion, sex, handicap, familial status or national origin, unless and only to the extent that
the covenant, condition or restriction (a) is not in violation of state or federal law, (b) is
exempt under 42 U.S.C.Section 3607 or (c) relates to a handicap but does not discriminate
against handicapped people.

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat
the lien of any mortgage or deed of trust made in good faith and for value.

2.      A deed of trust to secure an indebtedness in the amount shown below, and any other
obligations secured thereby.

| | |
|---|---|
| Amount: | $310,100.00 |
| Dated: | November 4, 2002 |
| Trustor: | Kareem Salessi, a married man |
| Trustee: | Golden West Savings Association Service Co., a California corporation |
| Beneficiary: | World Savings Bank, FSB, its successors and/or assignees |
| Recorded: | November 7, 2002 as Instrument No. 2002000984380, Official Records |

3.    A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby.

| | |
|---|---|
| Amount: | $88,600.00 |
| Dated: | November 4, 2002 |
| Trustor: | Kareem Salessi, a married man |
| Trustee: | Golden West Savings Association Service Co., a California corporation |
| Beneficiary: | World Savings Bank, FSB, its successors and/or assignees |
| Recorded: | November 7, 2002 as Instrument No. 20020984381, Official Records |

SCALE: 1" = 60'

# RACT N° 73 40

UNINCORPORATED TERRITORY OF THE COUNTY OF ORANGE,
STATE OF CALIFORNIA.
GEORGE D. SHAMBECK, L.S. 3419
111 LOTS          NOVEMBER, 1970          31.68 Ac.



NOTE:
SEE SHEET 2 FOR BASIS OF
BEARINGS, MONUMENT NOTES
& INDEX MAP

2807 4

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:
   a. building
   b. zoning
   c. land use
   d. improvements on the Land
   e. land division
   f. environmental protection
   This Exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.
   This Exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.
3. The right to take the Land by condemning it, unless:
   a. a notice of exercising the right appears in the Public Records at the Policy Date; or
   b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they appeared in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

## CONDITIONS

4. **Definitions.**
   a. Easement – the right of someone else to use the Land for a special purpose.
   b. Known – things about which You have actual knowledge. The words "Know" and "Knowing" have the same meaning as Known.
   c. Land – the Land or condominium unit described in paragraph 3 of Schedule A and any improvements on the Land which are real property.
   d. Mortgage – a mortgage, deed of trust, trust deed or other security instrument.
   e. Natural Person – a human being, not a commercial or legal organization or entity. Natural Person includes a trustee of a Trust even if the trustee is not a human being.
   f. Policy Date – the date and time shown in Schedule A. If the insured named in ,Schedule A first acquires the interest shown in Schedule A by an instrument recorded in the Public Records later than the date and time shown in Schedule A, the Policy Date is the date and time the instrument is recorded.
   g. Public Records – records that give constructive notice of matters affecting Your Title, according to the state statutes where the Land is located.
   h. Title – the ownership of Your interest in the Land, as shown in Schedule A.
   i. Trust – a living trust established by a human being for estate planning.
   j. We/Our/Us – Commonwealth Land Title Insurance Company.
   k. You/Your – the insured named in Schedule A and also those identified in paragraph 2.b. of these Conditions.
2. **Continuation of Coverage.**
   a. This Policy insures You forever, even after You no longer have Your Title. You cannot assign this Policy to anyone else.
   b. This Policy also insures:
      (1) anyone who inherits Your Title because of Your death;
      (2) Your spouse who receives Your Title because of dissolution of Your marriage;
      (3) the trustee or successor trustee of a Trust to whom You transfer Your Title after the Policy Date; or
      (4) the beneficiaries of Your Trust upon Your death.
   c. We may assert against the insureds identified in paragraph 2.b. any rights and defenses that We have against any previous insured under this Policy.
3. **How To Make A Claim.**
   a. Prompt Notice Of Your Claim
      (1) As soon as You Know of anything that might be covered by this Policy, You must notify Us promptly in writing.
      (2) Send Your notice to Commonwealth Land Title Insurance Company, 101 Gateway Centre Parkway, Gateway One, Richmond, Virginia 23235-5153, Attention: Claims Department. Please include the Policy number shown in Schedule A, and the county and state where the Land is located. Please enclose a copy of Your Policy, if available.

      (3) If You do not give Us prompt notice, Your coverage will be reduced or ended, but only to the extent Your failure affects Our ability to resolve the claim or defend You.
   b. Proof Of Your Loss
      (1) We may require You to give Us a written statement signed by You describing Your loss which includes:
         (a) the basis of Your claim;
         (b) the Covered Risks which resulted in Your loss;
         (c) the dollar amount of Your loss; and
         (d) the method You used to compute the amount of Your loss.
      (2) We may require You to make available to Us records, checks, letters, contracts, insurance policies and other papers which relate to Your claim. We may make copies of these papers.
      (3) We may require You to answer questions about Your claim under oath.
      (4) If You fail or refuse to give Us a statement of loss, answer Our questions under oath, or make available to Us the papers We request, Your coverage will be reduced or ended, but only to the extent Your failure or refusal affects Our ability to resolve the claim or defend You.
4. **Our Choices When We Learn Of A Claim.**
   a. After We receive Your notice, or otherwise learn, of a claim that is covered by this Policy, Our choices include one or more of the following:
      (1) Pay the claim.
      (2) Negotiate a settlement.
      (3) Prosecute or defend a legal action related to the claim.
      (4) Pay You the amount required by this Policy.
      (5) End the coverage of this Policy for the claim by paying You Your actual loss resulting from the Covered Risk, and those costs, attorneys' fees and expenses incurred up to that time which We are obligated to pay.
      (6) End the coverage described in Covered Risk 14, 15, 16 or 18 by paying You the amount of Your insurance then in force for the particular Covered Risk, and those costs, attorneys' fees and expenses incurred up to that time which We are obligated to pay.
      (7) End all coverage of this Policy by paying You the Policy Amount then in force, and all those costs, attorneys' fees and expenses incurred up to that time which We are obligated to pay.
      (8) Take other appropriate action.
   b. When We choose the options in paragraphs 4.a. (5), (6) or (7), all Our obligations for the claim end, including Our obligation to defend, or continue to defend, any legal action.
   c. Even if We do not think that the Policy covers the claim, We may choose one or more of the options above. By doing so, We do not give up any rights.

3

## CONDITIONS - CONTINUED

5. Handling A Claim Or Legal Action
   a. You must cooperate with Us in handling any claim or legal action and give Us all relevant information.
   b. If You fail or refuse to cooperate with Us, Your coverage will be reduced or ended, but only to the extent Your failure or refusal affects Our ability to resolve the claim or defend You.
   c. We are required to repay You only for those settlement costs, attorneys' fees and expenses that We approve in advance.
   d. We have the right to choose the attorney when We bring or defend a legal action on Your behalf. We can appeal any decision to the highest level. We do not have to pay Your claim until the legal action is finally decided.
   e. Whether or not We agree there is coverage, We can bring or defend a legal action, or take other appropriate action under this Policy. By doing so, We do not give up any rights.
6. Limitation Of Our Liability
   a. After subtracting Your Deductible Amount if it applies, We will pay no more than the least of:
      (1) Your actual loss;
      (2) Our Maximum Dollar Limit of Liability then in force for the particular Covered Risk, for claims covered only under Covered Risk 14, 15, 16 or 18; or
      (3) the Policy Amount then in force;
      and any costs, attorneys' fees and expenses which We are obligated to pay under this Policy.
   b. (1) If We remove the cause of the claim with reasonable diligence after receiving notice of it, all Our obligations for the claim end, including any obligation for loss You had while We were removing the cause of the claim.
      (2) Regardless of 6.b. (1) above, if You cannot use the Land because of a claim covered by this Policy:
         (a) You may rent a reasonably equivalent substitute residence and We will repay You for the actual rent You pay, until the earlier of:
            (1) the cause of the claim is removed; or
            (2) We pay You the amount required by this Policy. If Your claim is covered only under Covered Risk 14,15, 16 or 18, that payment is the amount of Your insurance then in force for the particular Covered Risk.
         (b) You may pay reasonable costs You pay to relocate any personal property You have the right to remove from the Land, including transportation of that personal property for up to twenty-five (25) miles from the Land, and repair of any damage to that personal property because of the relocation. The amount We will pay You under this paragraph is limited to the value of the personal property before You relocate it.
   c. All payments We make under this Policy reduce the Policy Amount, except for costs, attorneys' fees and expenses. All payments We make for claims which are covered only under Covered Risk 14, 15, 16 or 18 also reduce Our Maximum Dollar Limit of Liability for the particular Covered Risk, except for costs, attorneys' fees and expenses.
   d. If We issue, or have issued, a Policy to the owner of a Mortgage on Your Title and We have not given You any coverage against the Mortgage, then:
      (1) We have the right to pay any amount due You under this Policy to the owner of the Mortgage to reduce the amount of the Mortgage, and any amount paid shall be treated as a payment to You under this Policy, including under paragraph 4.a. of these Conditions;

      (2) Any amount paid to the owner of the Mortgage shall be subtracted from the Policy Amount of this Policy; and
      (3) If Your claim is covered only under Covered Risk 14, 15, 16 or 18, any amount paid to the owner of the Mortgage shall also be subtracted from Our Maximum Dollar Limit of Liability for the particular Covered Risk.
   e. If You do anything to affect any right of recovery You may have against someone else, We can subtract from Our liability the amount by which You reduced the value of that right.
7. Transfer Of Your Rights To Us
   a. When We settle Your claim, We have all the rights You have against any person or property related to the claim. You must transfer these rights to Us when We ask, and You must not do anything to affect these rights. You must let Us use Your name in enforcing these rights.
   b. We will not be liable to You if We do not pursue these rights or if We do not recover any amount that might be recoverable.
   c. We will pay any money We collect from enforcing these rights in the following order:
      (1) to Us for the costs, attorneys' fees and expenses We paid to enforce these rights;
      (2) to You for Your loss that You have not already collected;
      (3) to Us for any money We paid out under this Policy on account of Your claim; and
      (4) to You whatever is left.
   d. If You have rights under contracts (such as indemnities, guaranties, bonds or other policies of insurance) to recover all or part of Your loss, then We have all of those rights, even if those contracts provide that those obligated have all of Your rights under this Policy.
8. Entire Contract
   This Policy, with any endorsements, is the entire contract between You and Us. To determine the meaning of any part of this Policy, You must read the entire Policy. Any changes to this Policy must be agreed to in writing by Us. Any claim You make against Us must be made under this Policy and is subject to its terms.
9. Increased Policy Amount
   The Policy Amount will increase by ten percent (10%) of the Policy Amount shown in Schedule A each year for the first five years following the Policy Date shown in Schedule A, up to one hundred fifty percent (150%) of the Policy Amount shown in Schedule A. The increase each year will happen on the anniversary of the Policy Date shown in Schedule A.
10. Severability
    If any part of this Policy is held to be legally unenforceable, both You and We can still enforce the rest of this Policy.
11. Arbitration
    a. If permitted in the state where the Land is located You or We may demand arbitration.
    b. The arbitration shall be binding on both You and Us. The arbitration shall decide any matter in dispute between You and Us.
    c. The arbitration award may be entered as a judgment in the proper court.
    d. The arbitration shall be under the Title Insurance Arbitration Rules of the American Arbitration Association. You may choose current Rules or Rules in existence on Policy Date.
    e. The law used in the arbitration is the law of the place where the Land is located.
    f. You can get a copy of the Rules from Us.

# A WORD OF THANKS .....

As we make your policy a part of our permanent records, we want to express our appreciation of this evidence of your faith in Commonwealth Land Title Insurance Company.

There is no recurring premium.

This policy provides valuable title protection and we suggest you keep it in a safe place where it will be readily available for future reference.

If you have any questions about the protection provided by this policy, contact the office that issued your policy or you may write to:

Consumer Affairs Department

# Commonwealth Land Title Insurance Company

P.O. Box 27567
Richmond, Virginia 23261-7567
TOLL FREE NUMBER: 1-800-446-7086



### PRIVACY POLICY NOTICE

Dear LandAmerica Customer:

The Financial Services Modernization Act recently enacted by Congress has brought many changes to the financial services industry, which includes insurance companies and their agents. One of the changes is that we are now required to explain to our customers the ways in which we collect and use customer information.

The statement attached to or on the reverse side of this letter is the privacy policy of the LandAmerica family of companies. The three largest members of the family – Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, and Transnation Title Insurance Company – may issue policies and handle real estate closings in virtually every part of the country. A number of other companies in the family provide other real estate services, and some operate more locally. You may review a list of LandAmerica companies on our website (www.landam.com). You may also visit our website for an explanation of our privacy practices relating to electronic communication.

Our concern with the protection of your information has been a part of our business since 1876, when the company that is now Commonwealth Land Title Insurance Company issued its first policy. We will continue to protect the privacy, accuracy, and security of customer information given to us.

No response to this notice is required, but if you have questions, please write to us:

> LandAmerica Privacy
> P.O. Box 27567
> Richmond, VA 23261-7567.

### LandAmerica Companies

*Title Insurance Companies:* Commonwealth Land Title Insurance Company, Commonwealth Land Title Insurance Company of New Jersey, Industrial Valley Title Insurance Company, Land Title Insurance Company. Lawyers Title Insurance Corporation, Title Insurance Company of America, Transnation Title Insurance Company, Transnation Title Insurance Company of New York

*Relocation and Mortgages:* Commonwealth Relocation Services, CRS Financial Services, Inc., LandAmerica Account Servicing, Inc.

*Title Agents:* Austin Title Company, ATACO, Inc., Albuquerque Title Company, Atlantic Title & Abstract Company, Brighton Title Services Company, Capitol City Title Services, Inc., CFS Title Insurance Agency, Charleston Title Agency; Charter Title Company of Fort Bend, Galveston, and Sugarland; Commercial Settlements, Inc., Commonwealth Land Title Company; Commonwealth Land Title Company of Austin, Dallas, Fort Worth, Houston, Washington, Congress Abstract Corp., Cornerstone Residential Title, Cumberland Title Company, First Title & Escrow, Inc., Gulf Atlantic, Harbour Title, HL Title Agency, Lawyers Title Company; Lawyers Title of Arizona, El Paso, Galveston, Nevada, Pueblo, San Antonio, Lawyers Title Settlement Company, Lion Abstract, Longworth Insured, Louisville Title Agency of Central Ohio, Lorain County Title Company, M/I Title Agency, N/A/ Lawyers Title Agency, Oregon Title, Park Title, Partners Title Company, Pikes Peak Title Services, RE/Affirm Title Agency, Rainier Title Company, Residential Abstract, Residential Title, Rio Rancho Title, Texas Title Company, Title Transfer Service, Inc., TransOhio Residential Title Agency, Transnation Title & Escrow, Union Title Agency, University Title Services, Wilson Title Company

*Appraisals and Ancillary Services:* LandAmerica OneStop, Inc.

Form 3391-6 (May 2001)

# LANDAMERICA PRIVACY POLICY

*What kinds of information we collect.* Most of LandAmerica's business is title insurance, but there are companies in our family that provide other real estate services to consumers. We collect information about you, (for instance, your name, address, telephone number), and information about your transaction, including the identity of the real property that you are buying or financing. We obtain a copy of any deeds, notes, or mortgages that are involved in the transaction. We may get this information from you or from the lender, attorney, or real estate broker that you have chosen. Our title insurance companies then obtain information from the public records about the property so that we can prepare a title insurance policy. When we provide closing, escrow, or settlement services, mortgage lending, or mortgage loan servicing, we may get your social security number, and we may receive additional information from third parties including appraisals, credit reports, land surveys, escrow account balances, and sometimes bank account numbers to facilitate the transaction. If you are concerned about the information we have collected, please write to us.

*How we use this information.* The company giving or specifically adopting this notice does not share your information with marketers outside its own family. There's no need to tell us to keep your information to ourselves because we share your information only to provide the service requested by you or your lender, or in other ways permitted by law. The privacy laws permit some sharing without your approval. We may share internally and with nonaffiliated third parties in order to carry out and service your transaction, to protect against fraud or unauthorized transactions, for institutional risk control, and to provide information to government and law enforcement agencies. Companies within a family may share certain information among themselves in order to identify and market their own products that they think may be useful to you. Credit information about you is shared only to facilitate your transaction or for some other purpose permitted by law.

*How we protect your information.* We restrict access to nonpublic personal information about you to those employees who need the information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with law to guard your nonpublic personal information. We reinforce the company's privacy policy with our employees.

*Agents that may be covered by this policy.* Often, your transaction goes through a title insurance agent. Agents that are part of the LandAmerica family are covered by this policy. **Agents that are not part of the LandAmerica family may specifically, in writing, adopt our policy statement.**

Form 3391-6 (May 2001)



# COAST CITIES ESCROW
10101A Adams Avenue
Huntington Beach, CA 92646
(714) 378-9000 FAX (714) 378-9098

Kareem Salessi

Date : February 13, 2003
Escrow No. : 454-1152

28841 Aloma Avenue
Laguna Niguel, CA 92677

RE:   **28841 Aloma Avenue, Laguna Niguel, CA 92677**

Enclosed please find the following:

Policy of Title Insurance issued by Commonwealth Land Title Co. for your records.

We hope this transaction was handled to your satisfaction, and that we may be of service to you again should you have the need for escrow services in the future.

Coast Cities Escrow

Ann E. Skinner
Senior Escrow Officer/ Manager

rc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT- A :

30

SALESSI v. COMMONWEALTH - COMPLAINT            FILED 11-7-2008

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, s... ..te Bar number, and
[telephone number]:

Recording requested by and return to:

KAREEM SALESSI
28841 ALOMA AVENUE,
LAGUNA NIGUEL, CA. 92677
(949) 218 7666

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

|||||||||||||||||| 52.00
2007000735305 03:13pm 12/14/07
116 198 A03  3
0.00  0.00  0.00  0.00  6.00  40.00  0.00  0.00

| ☐ ATTORNEY FOR | ☑ JUDGMENT CREDITOR | ☐ ASSIGNEE OF RECORD |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS: P.O. Box 838
CITY AND ZIP CODE:  Santa Ana, CA 92702-0838
BRANCH NAME: CENTRAL JUSTICE CENTER

FOR RECORDER'S USE ONLY

PLAINTIFF:  KAREEM SALESSI

DEFENDANT:  THOMAS ABERCROMBIE, ET AL.

CASE NUMBER:
**04CC11080**

| **ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS** | ☐ Amended |

FOR COURT USE ONLY

1. The ☑ judgment creditor ☐ assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's

   > Name and last known address
   > SOUTHWOOD PEST CONTROL
   > 3345 E MIRALOMA AVE.,
   > ANAHEIM, CA. 92806-1926

   b. Driver's license No. and state: ☑ Unknown
   c. Social security No.: ☑ Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to (name and address):
      SOUTHWOOD PEST CONTROL, 3345 E MIRALOMA AVE., ANAHEIM, CA. 92806-1926

2. ☑ Information on additional judgment debtors is shown on page 2.

3. Judgment creditor (name and address):
   KAREEM SALESSI, 28841 ALOMA AVE.
   LAGUNA NIGUEL, CA. 92677

4. ☐ Information on additional judgment creditors is shown on page 2.

5. ☐ Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

Date: 12-13-2007
KAREEM SALESSI

(TYPE OR PRINT NAME)

*K. Salessi*

(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $  SEE  ATTACHED ITEMIZED LIST

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on (date): 10-26-2007
   b. Renewal entered on (date):

9. ☐ This judgment is an installment judgment.

10. ☐ An ☐ execution lien ☐ attachment lien
    is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of (name and address):

11. A stay of enforcement has
    a. ☑ not been ordered by the court.
    b. ☐ been ordered by the court effective until
       (date):

12. a. ☑ I certify that this is a true and correct abstract of
       the judgment entered in this action.
    b. ☐ A certified copy of the judgment is attached.

[SEAL]
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

This abstract issued on (date):
**DEC 1 3 2007**

ALAN SLATER
Clerk, by _____, Deputy
MAARIT NORDMAN

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2006]

**ABSTRACT OF JUDGMENT—CIVIL**
**AND SMALL CLAIMS**

Page 1 of 2
Code of Civil Procedure, §§ 488 480,
674 700.190

American LegalNet, Inc.

| PLAINTIFF: KAREEM SALESSI | CASE NUMBER: |
|---|---|
| DEFENDANT: THOMAS ABERCROMBIE, ET AL. | 04CC11080 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*

14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.　　　　　Name and last known address

DANA BALLARD
7054 E VIEWPOINT LN,
ANAHEIM, CA. 92807

Driver's license No. & state: ☑ Unknown
Social security No.: 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 ☐ Unknown
Summons was personally served at or mailed to *(address):*
DANA BALLARD
7054 E VIEWPOINT LN, ANAHEIM, CA. 92807

17.　　　　　Name and last known address

FRANK PEIMANI
302 BALDWIN AVE.,
SAN MATEO, CA. 94401-3920

Driver's license No. & state: ☑ Unknown
Social security No.: 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 ☐ Unknown
Summons was personally served at or mailed to *(address):*
FRANK PEIMANI
302 BALDWIN AVE.,
SAN MATEO, CA. 94401-3920

18.　　　　　Name and last known address

CENTURY FUNDING
302 BALDWIN AVE.,
SAN MATEO, CA. 94401-3920

Driver's license No. & state: ☑ Unknown
Social security No.: ☑ Unknown
Summons was personally served at or mailed to *(address):*
CENTURY FUNDING
302 BALDWIN AVE.,
SAN MATEO, CA. 94401-3920

19.　　　　　Name and last known address

Driver's license No. & state: ☐ Unknown
Social security No.: ☐ Unknown
Summons was personally served at or mailed to *(address):*

20.　　　　　Name and last known address

Driver's license No. & state: ☐ Unknown
Social security No.: ☐ Unknown
Summons was personally served at or mailed to *(address):*

21.　　　　　Name and last known address

Driver's license No. & state: ☐ Unknown
Social security No.: ☐ Unknown
Summons was personally served at or mailed to *(address):*

22. ☐ Continued on Attachment 22.

EJ-001 [Rev. January 1, 2006]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 2 of 2

# ITEMIZED LIST OF JUDGMENT DEBTORS:

1- Judgment in favor of plaintiff Kareem Salessi and against Defendant Dana Ballard: $ 375,000.

2- Judgment in favor of plaintiff Kareem Salessi and against Defendant Southwood Pest Control: $ 375,000.

3- Judgment in favor of plaintiff Kareem Salessi and against Defendants Frank Peimani and Century Funding: $ 75,000.

1    Kareem Salessi
     28841 Aloma Ave.
2    Laguna Niguel, CA 92677
3    Telephone: 949-218-7666

4    In Pro Per

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

OCT 26 2007

ALAN SLATER, Clerk of the Court

BY: G HERNANDEZ

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                         COUNTY OF ORANGE

10   Kareem Salessi,                    ) CASE NO. 04CC11080
                                        )
11              Plaintiffs,             ) Honorable James P. Gray
                                        ) Dept. C-9
12   vs.                                )
                                        ) DEFAULT JUDGMENT BY COURT
13   Michael Shadab,          ,         )
                                        )
14              Defendants.             )
                                        )
15   _____)

16       This action came on for hearing on October 25, 2007, at 9:00 a.m., before the Honorable

17   James P. Gray, judge presiding, in Department C-9 of the above-entitled court; John Chakmak of

18   Buxbaum & Chakmak, A Law Corporation, specially appeared at the default hearing for Plaintiff

19   Kareem Salessi.

20       It appearing that Defendants, Dana Ballard, Southwood Pest Control, Frank Peimani, and

21   Century Funding, having been regularly served with process, having failed to appear and answer

22   Plaintiff's Complaint in this action, and the default of those Defendants have been duly entered; on

23   application of Plaintiff to the court and after having heard and considered the evidence,

24       IT IS ORDERED that Plaintiff Kareem Salessi have and recover judgment from Defendants as

25   follows:

26       1.    Judgment in favor of Plaintiff and against Defendant Dana Ballard in the sum of

27   $ 375,000.00 plus Plaintiff's costs and disbursements in the sum of $_____,

28   together with interest on the judgment as provided by law.

-1-

DEFAULT JUDGMENT BY COURT

1        2.    Judgment in favor of Plaintiff and against Defendant Southwood Pest Control in the

2    sum of $ _375,000.00_ plus Plaintiff's costs and disbursements in the sum of

3    $_____, together with interest on the judgment as provided by law.

4        3.    Judgment in favor of Plaintiff and against Defendants, Frank Peimani and Century

5    Funding, in the sum of $ _75,000.00_ plus Plaintiff's costs and disbursements in the sum of

6    $_____, together with interest on the judgment as provided by law.

7

8    DATED: _10/26/07_

9                            James P. Gray, Judge of the Superior Court

10   f:\wp\Salessi\default prove up\Pleading\Default judgment by court.doc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT- B

31

FROM : INSTANT MEDIA NETI     FAX NO. : 9493490612     Oct.     '002 11:20AM  P2
WEST LABEL     INC.   Fax:562-004-2076

Oct 30 2002   9:25     P.03

10-29-2002

To Tom Anbercronbie + Nick 2003

Regarding 28841 Aloma
Laguna Niguel Ca.

Due to your buyers
Breach of contract my clients
have decided to cancel
this escrow as of
10-29-02

Thank you

Tamyi Richardson

Seller _____ Date   10-30-02

Seller _____ Date   11.30.02

Buyer _____ Date ____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17      # EXHIBIT- C

18

19

20

21

22

23

24

25

26

27

28                                    32

10-5-2008
- DOUGLAS M. FARRELL, esq.
P.O.BOX 183, SIERRA MADRE, CA. 91025
TEL: 626-355 3401 FAX: 626-355 4230
Attorney for LandAmerica Title Insurance
- California Department of Insurance
Consumer Service Division
300 South Spring Street, S-201
Los Angeles, Ca. 90013
- Tel: 213- 897 8921

<div style="float:right; border:1px solid black">

**KAREEM SALESSI**
Bank Fraud & forgery victim
28841 ALOMA AVE.,
LAGUNA NIGUEL, 92677
TEL/FAX: 949-218 7666

</div>

Dear Mr. Farrell:

    I received a letter from you dated 9/25/08, responding to my incomplete email response, and declining my title-claims, and damage claims, under the pretext that the purported deed of trust, and loan, which the house was foreclosed on was an equity line of credit which I had taken out on the house in 2004. **This is a false claim**. I never took an equity line on the house, particularly because of the lawsuit and my intentions to recover my money and return the house to defendants Ortiz, since Nov. 2002. This loan had been an assumption of the former fraudulent, and forged, loan of $88,600. which had been dumped onto me as a second loan in 2002, and which had been certified and recorded by your clients, Commonwealth Title Insurance Company.
    Carol Butler, of Commonwealth, was an aider & abettor of the forgeries with Coast Cities Escrow, at least in the following manner:

-   that she knew Ann Skinner personally;
-   that she knew Skinner's signature;
-   that she knew Skinner was not in California;
-   that the four signatures and notary stamps of Skinner on four documents were all forgeries;
-   that recording each one of the said documents amounted to one count of felony against her, and against Stewart.

    Stewart, a purported employee of Commonwealth, whose name "C. Stewart" appears on the forged recorded documents, has acknowledged under the penalty of perjury that she knows Ann Skinner personally. Stewart has identified Skinner's notary stamp and knew that all the four signatures purporting to be Skinner's signatures were forgeries. Here you had two Commonwealth officers directly involved in the fraudulent handling, processing, execution, and recording of the forged documents. As you know, each recording amounts to one count of felony against those involved in the

1

chain of recording, per PC §§115.5, 470, et seq. Also that each recording carries with it $10,000. of civil penalty per each incident, on top of $75,000. Criminal penalty, also per incident. I am demanding from you to inform me if C. Stewart was a notary, and/or that he/she had a bond similar to notary bonds, and if so I need to have a copy of it. Please remember that to comply with the six year statute of limitations against notary E & O bonds I must file a new complaint, before Nov. 5, 2008, therefore it is important that you compel your client to provide me the requested details of C. Stewart A.S.A.P.

As already mentioned, I had never taken an equity loan, or cashed out, anything on this house. However, the original fraudulent loan of $88,600 documents state it to be an advance to me, which probably means that they cashed out the $88,600. in the escrow, as if it had been advanced to me, and stole the whole fund, just like my $55,000. down payment which I tried to prevent them from cashing. These were facilitated with the fraudulent recordation of the forged loan documents by your Title Insurance client, because only then are funds released to escrow, not before, on 11/7/2002.

This is the scam which banks have been inflicting on millions of borrowers by splitting their loans into two, where the second loan is always a part of the inflated price which the lender cashes out for its own kickbacks and plunders. These types of fraudulent loans are called **"piggyback"** and are one of the causes of action in California Attorney General's recent First Amended Complaint against Countrywide, in case # **No. LC081846, as charged in its paragraph 22:**

22. Defendants also employed various lending policies to further their deceptive scheme and to sell ever-increasing numbers of loans, including (a) the dramatic easing of Countrywide's underwriting standards; (b) the increased use of low- or no-documentation loans which allowed for no verification of stated income or stated assets or both, or no request for income or asset information at all; (c) urging borrowers to encumber their homes up to 100% (or more) of the assessed value; and (d) placing borrowers in "piggyback" second mortgages in the form of higher interest rate HELOCs while obscuring their total monthly payment obligations.

World Savings had been soliciting the refinancing of the loans ever since 2003, however, I had been told by numerous attorneys that if I wanted to maintain claims against them I would probably have to maintain the same loans. Finally, as a pre-litigation discovery tool, and to find out how they operate their frauds, I found out that it was possible to have them assume a loan without actually changing it, and without any financing charges.

2

This was done by only their central "ASSUMPTIONS DEPARTMENT", in San Antonia Texas. So, I went to pains to get that done by such an assumption, however, again they defrauded me by similar non-disclosures as before, and by validating the same forged appraisal report which defendants Shadab/Alpha had fabricated with my money and given to World Savings, and prevented me from getting a copy of. They also did not disclose that the loan assumption changes the title policy. You are telling me that it changed the policy as to the assumed smaller loan, not regarding the main larger loan. However, this has no bearing on the title policy of the GRANT-DEED which was wholly void, as your own hand-writing-expert verified in late 2007. It was also a title policy violation not to provide me the results of your forensics analysis.

Wachovia/World Savings had foreclosed on both of the loans, as they told me on recorded phone conversations. However, they physically only used the 2004 Deed of Trust for at least these reasons: because it had been properly notarized; because they could avoid the disclosure of the forged main loan; because they intended to write off the big loan as a loss. You may know that all the banks are now beyond liquidity crisis, and in fact insolvent, which is because they had lent over one thousand times of the money at their disposals (PONZI). According to Reuters, between Monday and Friday of the week ending on 9/26/2008 banks plundered $940,000,000,000. of Ponzi dollars from the Federal Reserve, by overdrawing their accounts. In fact they made the Federal Reserve Corporation completely insolvent by Friday 9/26/08. The Bail-Out, which was in fact a Fail-Out, a complete scam on the country, and the greatest plunder in history by the criminal banks who had executed their illegal Ponzi loans with the aiding & abetting of title insurance companies, like your client Commonwealth. That is how much they came short of last week, and this will go on to over $10 trillions as I had written in my 2004 complaint, which you have. See (Exhibit-A)

On 9-29-2008 I received a copy of the complaint filed by Paul L. Bishop, a former loan-executive, now Whistle-blower of World Savings. (Exhibit-B) This explains how the bank routinely forged signatures on loan-documents in order to have them executed, funded, and paid [with Ponzi Dollars]. This may be how they forged my signatures since I had been told to wait for the signing until Ann Skinner, or someone else, showed up with the missing documents, and with a new contract and escrow instructions. You know this did not happen but that the loans were fraudulently funded by World Savings, and recorded by your client, although never executed nor delivered to me in violation of countless statutes, particularly of the

_Uniform Vendor and Purchaser Risk Act, Civil Code §1662_ :

3

*Title to d...s determines when a creditor can acquire a lien on money or property a debtor will receive at the close of escrow or when a commission or other demand may be paid from proceeds. Until title passes, the money is still the buyer's money and the property is still the seller's. Thus a creditor of the buyer cannot acquire a lien on the property and the creditor of the seller can not reach the purchase money until the escrow closes."*

In short, I did not borrow money but your client stole my money and in agreement with its co-conspirators, namely Coast Cities Escrow, and World Savings, created two false and fraudulent loans, based on three false and fraudulent Deeds, and without passing the title of the house to me. To accomplish this hub & spokes fraud your client did the following acts:

1- placed four signatures of/by "C. Stewart" on five forged documents (four-five counts of forgery-on paper);

2- scanned the forged documents into Commonwealth computers (four counts of wire fraud);

3- fraudulently converted four consecutive Orange County Recorder Document Stamps, by E-mail (ie: four counts of Wire fraud, plus theft);

4- superimposed those four images of OC-Document Stamps on the five forged grant-deeds and loans; this was inside the computer-No paper (4-5 counts of wire fraud);

5- emailed to the OC-Recorder's Office the forged images of the completed five forged deed and loan documents including the four recorders stamps (4-5 counts of Wire fraud).

The OC-Recorder never saw a single page of those above purportedly recorded, paper documents. Your client, Commonwealth Title, then printed those five forged, and feloniously recorded, documents and mailed three of them to me, ~~one to the County Assessor, one to the County Recorder~~, and two to World Savings, in Texas. Each mailing of these documents amounted to one count of mail fraud, per RICO, Title 18 U.S.C. §§1961-1965. Wire frauds also come under RICO.

These forgeries also explain why the bank never resorted to their title policy with your client, Commonwealth, that is due to the frauds in loan terms, and the forgeries. I have learned that when there is any type of fraud, or material defect, in the loan process the title insurer has no liability to the lender. I had requested from you, and you have failed to produce the lender's title policy, which must be to prevent the disclosure of the above detail. See my complaint against Wachovia attorneys in (Exhibit-C). See also Wachovia's

4

bankruptcy and its rejected sell out attempt of their "assets" to Citicorp for only $2.2 billions, while just a year ago they claimed to have owned assets of over One Trillion dollars. This is best proof of my consistent claims that banks in the last eight years lent Ponzi dollars which would collapse this country in 2007. This is exactly what happened. Since 2007, lawyers, and politicians, have been concealing and preventing the public disclosure of this colossal collapse.

Lastly, I would like to cite a couple of cases on point here, and further remind you that a few chapters in the CEB California Title Insurance Practice Book (eg. Ch-11) explain clearly the title insurer's responsibilities and liabilities to their insured:

Case 1- *Nebco, Inc. v. Transamerica Title Ins. Co.*, 21 Cal. App. 3d 222, 98 Cal. Rprtr. 237 (1971) (held: policy provisions permitting insurer to litigate defects in title to final determination do not provide immunity from liability for actual damages resulting from defect while litigation ongoing).

Case 2- Title insurance company is trustee as to all principals to escrow; escrow officer has duty to each of principals to act fairly and to disclose any facts affecting principals' interests. *Moe v. Transamerica Title Ins. Co.* (1971) *21 Cal. App. 3d 289, 306, 98 Cal. Rprtr. 547*

## CONCLUSION:

In addition to my title claims, I believe I am entitled to **all the damages** that I will have incurred, as a result of the frauds, and negligent acts, of your client insurer. Further, your client's consistent denials, to rectify my title claims and mitigate my damages, has amounted to multiple counts of bad-faith, which is actionable under California Insurance Code §790.3.

~~I also believe that~~ your client.

Yours truly,

Kareem Salessi

P.S.: in case you are not yet aware, the reason these forgeries occurred was that after escrow cancellation, on 10/30/02, I informed World's broker that I would then use the loan for another house, to which he protested, thereupon they quickly engineered this forgery scheme to sell me an unwanted house which they could **NOT** they have sold any other way.

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT- D

33

RECORDING REQUESTED BY:
And when recorded return to:
Kareem Salessi
28841 Aloma Ave.,
Laguna Niguel, Ca. 92677.
(949) 218 7666

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 30.00
2008000383999 02:15pm 08/12/08
230 200 N03 9
0.00 0.00 0.00 0.00 24.00 0.00 0.00 0.00

Indexing instructions:
This notice must be indexed
as follows:
Grantor and grantee index-
Each claimant is a grantor.

## NOTICE OF INTENT TO PRESERVE INTEREST

This notice is intended to preserve an interest in real property from extinguishment pursuant to Title 5 (commencing with Section 880.020) of Part 2 of Division 2 of the Civil Code (Marketable Record Title).

**CLAIMANT:**         KAREEM SALESSI
                      - 30262 Crown Valley Parkway,
                      B-174, Laguna Niguel, Ca. 92677

**INTEREST:**         FEE SIMPLE ABSOLUTE, FREE & CLEAR OF ALL CLAIMS.
                      Per Documents # 20020984379, # 2007000735305,
                      #2008000267078, # 2008000125844, in official records
                      of County of Orange; O.C. Sheriff Crime Report# 06-058562;
                      OSC Cases 04CC11080, 30-2008-00107531; Appellate Cases #
                      G038002, G040713; Grant deeds and loan documents were
        SEE EXHIBITS:← {  forged by First Team Real Estate & Coast Cities Escrow, in
        A, B, C, D, E    Nov. 2002, & are void, Penal Codes §§115.5; 470-480, et seq.
**PROPERTY:**         28841 Aloma Ave. Laguna Niguel, Ca. 92677; OR:
                      LOT 63 OF TRACT 7340, IN THE CITY OF LAGUNA NIGUEL,
                      COUNTY OF ORANGE, CALIFORNIA AS PER MAP
                      RECORDED IN BOOK 280, PAGE (s) 1 to 4, INCLUSIVE OF
                      MISCELLANEOUS MAPS IN THE OFFICE OF THE COUNTY
                      RECORDER FOR THE SAID COUNTY;
                      *Assessor's Parcel No.637-124-12*

I assert under penalty of perjury that this notice is not recorded for the purpose of slandering title to real property and I am informed and believe that the information contained in this notice is true.

Signed: _____  Date: 8/12/2008
(claimant)

State of _____,
County of _____, ss.
On this _____ day of _____, in the year _____, before me
_____, personally appeared
_____, personally known to me to be the person whose name is subscribed to this instrument, and acknowledged that he executed it.

Signed: _____  Official Seal:

Office: _____

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _ORANGE_ }

On _08/12/2008_ before me, _Cheryl Burt, Notary Public_,
Date                          Here Insert Name and Title of the Officer

personally appeared _KAREEM SALESSI_
                         Name(s) of Signer(s)

CHERYL BURT
Comm.# 1509192
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires August 22, 2008

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Cheryl Burt, Notary Public_
                    Signature of Notary Public

Place Notary Seal Above

─────────── OPTIONAL ───────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here





# *Eva R. Salzer, M.A., CDE, Inc.*

Certified Questioned Document Examiner

N.A.D.E.

A.C.F.E.

January 23, 2008

Mr. Kareen Salessi
28841 Aloma Ave.
Laguna Niguel, CA 92677



Dear Mr. Salessi:

**Re: Salessi v. Abercrombie**

On December 5, 2007, I received Mr. Matoff's report, which included all documents, via Federal Express.

On January 21, 2008, Mr. Salessi was in my office to give me some of his handwriting exemplars.

The <u>STANDARD</u> documents consisted of:

.... 1) A photocopy of a "Page 3 of 3" with Patrick Ortiz and Debra A. Ortiz signatures..
....2) A photocopy of the Grant Deed, dated 11/18/05, signed by Patrick and Debra Ortiz.
.....3) A photocopy of a letter dated November 21, 2003, signed by Patrick and Debra Ortiz
.....4) An original original Handwriting Sample Mr. Salessi filled out.
.....5) A photocopy of the Interspousal Transfer Grant Deed, dated October 22, 2002, signed
........by Ladan Fonooni.

The <u>QUESTIONED</u> documents were  photocopies of a 1) GRANT DEED, dated November 06, 2002, which has signatures in the name of Patrick and Debbie Ortiz..2) a photocopy of a paper titled "PART III: Purchase Price and Terms of Sale" with the name or "Fonooni", and 3) a photocopy of a page dated October 18, 2002, the bottom paragraph crossed out, and some handwriting.

<u>Purpose of Examination</u>

I was asked to compare and contrast signatures on the QUESTIONED Grant Deed to the STANDARD signatures  to see if they were penned by the same persons.

The signature on the Interspousal Transfer Grant Deed was compared to Part III: Purchase Price and Terms of Sale, and they were not penned by the same person.

Two specimens of handwriting may be considered to be of common authorship if they do not display any single consistent dissimilarity in any feature which is fundamental to the structure of the handwriting and whose presence cannot be reasonably explained.

<u>Examination and Findings</u>

In the course of conducting the handwriting comparison between the Q and S documents, generally accepted comparison techniques and procedures were employed. This examination has been limited to the documents submitted for examination.

Each document was scanned, using an HP PSC 1510 scanner, and viewed in greatly enlarged state.

As there are many structural differences in the stroke structures in the signatures between the QUESTIONED GRANT DEED and the STANDARD signatures, they were not written by the same persons.

The signature on the Interspousal Transer Grant Deed was compared to PIII: Purchase Price and Terms of Sale. They were not penned by the same person.

The signature on the "Certification, dated 10-22-02 ", was not penned by the the same person as the one on the Interspousal Transfer Grant Deed.

The handwriting on the page dated October 18, 2002, was not written by Mr. Salessi.

Photocopies of all documents are incorporated as part of the report.

Composite pages are included in this report.

Sincerely,

*Eva R. Salzer*

Eva R. Salzer

Certified Questioned
Document Examiner

# DECLARATION OF EVA SALZER

## (Forensic Document Examiner)

*EXHIBIT-B)*

I, Eva R. Salzer, declare:

1. I am a certified questioned document examiner. This declaration is based on my personal knowledge.

2. At the request of Mr. Kareem Salessi, I examined four questioned documents recorded in the Orange County Hall of Records with the following consecutive numbers:

1. Document # 20020984378.    Description: GRANT DEED;
2. Document # 20020984379.    Description: GRANT DEED;
3. Document # 20020984380.    Description: DEED OF TRUST;
4. Document # 20020984381.    Description:     REVOLVING TRUST
   DEED;

3- On all the above four questioned documents, I examined the disputed writings and signatures of Ann E. Skinner. I found, All the said writings and signatures, to have been made by the same person;

4- I examined and compared a Certified California Notary Oath, and a Certified California Notary Bond, both signed by Ann E. Skinner. I used both signatures as her STANDARD SIGNATURES;

5- I examined several certified grant deeds, and deeds of trusts, signed by Ann E. Skinner. The signatures and writings on these grant, and trust, deeds corresponded with those of Ann E. Skinner signatures in number 4 above (i.e.: Oath & Bond). I also used these signatures as her STANDARD SIGNATURES and compared the four questioned documents' disputed signatures against these STANDARD signatures;

6- The, disputed signatures, of Ann E. Skinner in the four above listed recorded questioned documents, in number 2 above, are remarkably different from those appearing on the documents named in numbers 4 and 5 above, and were clearly penned by a different person;

7- I prepared a report of my findings. A copy of my report is attached hereto;

8- A copy of my curriculum vitae is also attached hereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration is executed on July  3  , 2008, at Santa Monica, California.

_Eva R. Salzer_
EVA R. SALZAR

# DECLARATION OF EVA SALZER

## (Forensic Document Examiner)

*EXHIBIT-C*

I, Eva R. Salzer, declare:

1. I am a certified questioned document examiner. This declaration is based on my personal knowledge.

2. At the request of Mr. Kareem Salessi, I examined four questioned documents recorded in the Orange County Hall of Records with the following consecutive numbers:

1. Document # 20020984378.    Description: GRANT DEED;
2. Document # 20020984379.    Description: GRANT DEED;
3. Document # 20020984380.    Description: DEED OF TRUST;
4. Document # 20020984381.    Description:    REVOLVING   TRUST
   DEED;

3- On the above 3rd and 4th questioned documents, I examined the signatures disputed by Kareem Salessi.

4- I examined and compared several documents signed by Kareem Salessi sent to me by telefax. I used the telefaxed signatures as Mr. Salessi's STANDARD SIGNATURES;

6- I found some stroke differences between Mr. Salessi's signatures on the two questioned deed documents and the standard signatures which were faxed. I made a qualified determination that the questioned documents' signatures of Mr. Salessi were not penned by Mr. Salessi. My conclusion was qualified since the standard signatures were sent by fax.

7- I prepared a report of my findings.  A copy of my report is attached hereto;

8- A copy of my curriculum vitae is also attached hereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration is executed on July  3  , 2008, at Santa Monica, California.

EVA R. SALZAR



# TOM DALY
### CLERK-RECORDER

<div align="right">

PROPERTY RECORDS
BIRTH AND DEATH RECORDS
MARRIAGE LICENSES/RECORDS
PASSPORTS
FICTITIOUS BUSINESS NAMES
NOTARY REGISTRATION
ORANGE COUNTY ARCHIVES

</div>

Kareem Salessi                                                          January 16, 2008
28841 Aloma Avenue
Laguna Niguel, CA  92677

Dear Mr. Salessi:

Thank you for visiting the Orange County Clerk-Recorder Department.

As it was explained to you when you visited our office on December 28, 2007, and again on January 11, 2008, it is the responsibility of this Department to record those documents that meet the recording requirements of California State law.  The Clerk-Recorder is not authorized to determine the correctness of the information set forth, but only ensure that a document meets the minimum State mandated threshold to be recorded.  The requirements to record a document are governed by statute, as are the duties of the Clerk-Recorder in respect to recording these documents and is strictly prescribed by law.

Please know that State Business & Professions Code 6125 prohibits the Clerk-Recorder Department from rendering legal advice.  As a courtesy, we have forwarded the copies you left in our Department, of your correspondence with other agencies, to the District Attorney's Consumer Protection Unit.  If you believe that fraud has occurred you may wish to consult with an attorney.

I hope this response adequately answers your questions.

Sincerely,

Terri Nissen
Senior Recording Supervisor

*EXHIBIT-D*

ARCHIVES, MARRIAGES, PASSPORT SERVICES
OLD ORANGE COUNTY COURTHOUSE
211 WEST SANTA ANA BOULEVARD
SANTA ANA, CALIFORNIA 92701

ORANGE COUNTY
HALL OF FINANCE AND RECORDS
12 CIVIC CENTER PLAZA, ROOM 101
SANTA ANA, CALIFORNIA 92701

SOUTH COUNTY BRANCH OFFICE
LAGUNA HILLS CIVIC CENTER
24031 EL TORO ROAD
LAGUNA HILLS, CALIFORNIA 92653

(714) 834-2500  ◆  FAX (714) 834-2675  ◆  WWW.OCRECORDER.COM  ◆  WWW.OCARCHIVES.COM







## CURRICULUM VITAE

Eva R. Salzer

Board Certified Document Examiner



## BOARD CERTIFICATIONS

- ◆ Court Qualified Expert Witness in Handwriting Identification in California
- ◆ National Board of Document Examiners, New York, NY, 1988
- ◆ National Association of Document Examiners, Princeton, NJ, 1994
- ◆ National Association of Document Examiners, recertified, 2005

## MEMBERSHIP AND OFFICES IN PROFESSIONAL SOCIETIES

- ◆ National Association of Document Examiners (NADE) Member
- ◆ NADE, Chair Ethics Committee, 1995
- ◆ NADE, Chair Membership Committee, 1998, 1999
- ◆ NADE, Member Certification Committee, 1997
- ◆ American Handwriting Associations Foundation (AHAF) Greater Los Angeles Chapter President 1992
- ◆ AHAF, Chair, 1993 National Convention
- ◆ Vice President, California Coalition of Forensic Handwriting Experts, 1997, 1998, 1999
- ◆ Forensic Expert Witness Association Member (Board Member, 2005)

## EDUCATION

- ◆ BA Degree in Social Welfare, California State University, Northridge, 1964
- ◆ MA Degree in Special Education, California State University, Los Angeles, 1977
- ◆ Numerous Professional Seminars, Workshops, and Conferences
- ◆ Seminar by Larry Ziegler, Senior Forensic Document Examiner for the FBI, 1996
- ◆ Andrew Bradley Training Course in Forensic Document Examination, Denver, CO, 1995
- ◆ Andrew Bradley Advanced Studies in Forensic Document Examination, Denver, CO, 1998

## EXPERIENCE

- ◆ Conducted Lecture for Public Defenders
- ◆ Conducted Lecture for San Fernando Valley Criminal Bar Association
- ◆ Conducted Lecture for Los Angeles Bar Association on Questioned Documents
- ◆ Conducted Lecture on Expert on Deposition at National Conferences, 1994
- ◆ Testified and Wrote Letters of Opinion for Public Defenders and Other Attorneys, Banks, Real-Estate Firms and Other Organizations Concerning Wills, Forgeries, Identities, and Certifications
- ◆ Was Assigned United States Delegate to China under the Cultural Exchange Program in Handwriting Analysis, 1987

-- Revised in 2007

voice: 310/458-1121 fax: 310/451-1867

THIS IS A TRUE CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL,
IMPRINTED IN PURPLE, OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: __AUG 1 2 2008__

CERTIFICATION FEE: $10.00

COUNTY CLERK-RECORDER

ORANGE COUNTY
STATE OF CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT- E

34

Untitled

# REDLOC ONLINE

MAIN | SEARCH RESULTS | DAILY LISTINGS | SEARCH | ACCOUNT | LOGOFF

**Real Estate Owned**
**1 Listings**

**Detail Listing**

## 1. Laguna Niguel - 28841 ALOMA AVE , 92677 TMG 951-J2

**APN** 637-124-12 Tract 7340 Lot 63 Book 280 Page 1-4
**Trustor** SALESSI, KAREEM
**NewOwner** WACHOVIA MORTGAGE FSB C/O GOLDEN WEST SAVINGS ASSCO SERV 4101 WISEMAN BLVD T6F1, SAN ANTONIO, TX 78251
**Phone** (210) 543-4998
**Sale Date** 7/15/2008 **Minimum Bid** 0 **Amount Paid** 89,777

| LoanAmt | 0 | RecDate | 7/18/2008 | LastSold | 10/29/1997 | BldgSize | 1,310 | Garage | | Beds | 3 Y |
|---------|---|---------|-----------|----------|------------|----------|-------|--------|--|------|-----|
| DlnqtDate | | Inst# | 343302 | LandValue | 170,213 | LotSize | 6,745 | A/C | | Baths | - |
| DlnqtAmt | 0 | LoanDate | 6/1/2004 | BldgValue | 63,539 | UseCode | R122 | Pool | | Units | 0 |
| AsOf | | Loan# | | AssdValue (2000) | 491855 | YearBuilt | 1971 | TransVal | 225,000 F | Floors | 0 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT- F

35

# FILED

OCT 26 2001

GARY L. GRANVILLE, Clerk-Recorder
By_____ DEPUTY

**Recorded in Official Records, County of Orange**
**Gary Granville, Clerk-Recorder**

6.00
20010759235 11:53am 10/26/01
170 10 B05 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY AND MAIL TO:

NAME *Ann Skinner*

STREET ADDRESS *26 Corsica Dr*

CITY STATE *Newport Beach, CA 92660*



SPACE ABOVE THIS LINE FOR COUNTY CLERK'S STAMP          SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

# Western Surety Company

## CALIFORNIA NOTARY PUBLIC BOND

Amount of Premium $ 35.00

### KNOW ALL MEN BY THESE PRESENTS:

BOND No. N-25003309

That we, _____Ann E. Skinner_____, as Principal, and WESTERN SURETY COMPANY, a corporation duly licensed to do surety business in the State of California, as Surety, are held and firmly bound unto the State of California, in the sum of Fifteen Thousand ($15,000.00) Dollars, lawful money of the United States of America, to be paid to the State of California, or its assigns, for which payment, well and truly to be made, we bind ourselves and our legal representatives, jointly and severally, firmly by these presents.

Signed and dated _____October 23, 2001_____.
THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That whereas, the above bounden

Principal was on _____October 17, 2001_____, duly appointed a Notary Public in the State of California for the term of four years from the date of his commission.

NOW THEREFORE, if the said Principal shall well, truly and faithfully perform all official duties required of him by law, and all such additional duties as may hereafter be imposed on him as such officer by any law of the State of California, then the above obligation to be void, otherwise to remain in full force and virtue.

_Ann E. Skinner_
Principal

(Executed under penalty of perjury
as provided in C.C.P. 995.630).

WESTERN SURETY COMPANY

By _Stephen F. McGlone_

Stephen F. McGlone, Attorney-in-Fact

STATE OF CALIFORNIA } ss
County of Sacramento

ACKNOWLEDGMENT

On _October 23, 2001_ before me, _____J. L. McGlone, A Notary Public_____

(here insert name and title of the officer), personally appeared ___Stephen F. McGlone_____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Form 915-D – 11-2000



J. L. McGLONE
COMM. # 1275356
NOTARY PUBLIC • CALIFORNIA
SACRAMENTO COUNTY

**AND CERTIFICATE OF FILING**

**MUST BE FILED IN THE COUNTY CLERK'S OFFICE BY 11-16-2001**

*I hereby certify that the official bond and oath of office of the person whose name is shown below, was filed on the date indicated and that the following is a copy of said oath.*

State of California
County of **ORANGE**

☑ *Subscribed and sworn to before me, and filed in my office,*

**OR**

☐ *Filed in my office, this*

_____ day of **OCT 26 2001** _____ 20____

~~GRANVILLE~~
**CLERK-RECORDER**

County Clerk/Deputy

[PLACE OFFICIAL SEAL HERE]

**(This Area is for County Clerk's Use Only)**

I, _____ Ann E. Skinner _____ , *do solemnly swear and (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.*

**SIGNATURE
OF NOTARY**

*The signature must be used by you in signing ALL notarized documents and must match the signature on your Notary Public application.*

☐ **Check here if your business address has changed. Make any changes below.**

Fidelity Title Co
3 Corporate Plaza #230
Newport Beach 92660

**5**

**Ann E. Skinner**

( ) -

☐ **Check here if county transfer.**

Commission No. **1325672** for term commencing 10/17/2001 and ending 10/16/2005 in the county of ORANGE.

State of California
County of _____

*Subscribed and sworn to before me on*

this _____ day of _____ , 20 ___

_____
*(Signature of Notary Public administering oath of office)*

**FOR PERSONS FILING BY MAIL**

[PLACE NOTARY SEAL HERE]

**NOTE: FOR INFORMATION ON THE AMOUNT OF THE FEES FOR FILING AND RECORDING THE OFFICIAL BOND AND OATH, CONTACT YOUR COUNTY CLERK/RECORDER.**

Sec/State NP 18 (Rev. 3/97)

PI: 618794

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)

☐
☐
KAREEM SALESSI ☐

**DEFENDANTS**

Commonwealth Land Title Insurance Company, a corporation; ☐
Coast Cities Escrow, a corporation; Western Surety Company, a corporation; ☐
Ann E. Skinner, an individual; and Does from 1-20; ☐

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

KAREEM SALESSI, In propria Persona

Attorneys (If Known)

Mr. Douglas M. Farrell. esq. Attorney for Commonwealth Title Insurance Co. ☐
Mr. Mark Cwern, esq., Attorney for Coast Cities Escrow & Ann E. Skinner

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No    ☑ **MONEY DEMANDED IN COMPLAINT: $** IN EXCESS OF $75,000.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. 1332(a)(1); By violations of 18 USC 1341; 1343, defendants created and recorded multiple forged deed and loan documents causing substantial losses to Plaintiff

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☑ 290 All Other Real Property | | | | |

---

**FOR OFFICE USE ONLY:** Case Number: **SACV 08-01274 DOC (MLGx)**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑Yes
If yes, list case number(s):    SACV08-00959 CJC (AGRX)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
                             ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ☐<br>          ORANGE | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| COAST CITIES ESCROW- ORANGE ☐<br>ANN E. SKINNER-            ORANGE | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | COMMONWEALTH LAND TITLE INSURANCE CO.: PENNSYLVANIA☐<br>WESTERN SURETY COMPANY; ILLINOIS |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date   11-7-2008

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV08- 1274 DOC  (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| ☐     KAREEM SALESSI☐    PLAINTIFF(S) <br><br> v. <br><br> Commonwealth Land Title Insurance Company, ☐ corporation; Coast Cities Escrow, a corporation☐ Western Surety Company, a corporation;☐ Ann E. Skinner, an individual; and Does 1-10;☐ DEFENDANT(S). | **SACV 08-01274 DOC (MLGx)** <br><br><br> **SUMMONS** |

TO:    DEFENDANT(S):

    A lawsuit has been filed against you.

    Within ___30___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☑ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __KAREEM  SALESSI_____, whose address is _28841 ALOMA AVENUE, LAGUNA NIGUEL, CALIFORNIA, 92677_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __NOV 1 0 2008_____

By: __N. BOEHME_____
              Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

FOR OFFICE USE ONLY