

1  KAREEM SALESSI
2  28841 ALOMA AVE.
   LAGUNA NIGUEL, CA. 92677
3  TEL: (949) 870 6352
4  Plaintiff

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR 11 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

RECEIVED
BUT NOT FILED
MAR 11 2009
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
BY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11  KAREEM SALESSI,
12              Plaintiff,
13  vs.
    Commonwealth Land Title Insurance Company;
14  Debra A. Ortiz; Patrick F. Ortiz; Coast Cities
    Escrow; Western Surety Company; Cameron
15  Merage; Ann E. Skinner; County of ; Golden West
    Savings Association Service Co.; World Savings
16  Bank, FSB; Wachovia Mortgage, FSB; Wachovia
    Corporation; Fidelity National Financial; William
17  M. Monroe; Michael B. Goldberg; Anglin
    Flewelling Rasmussen Campbell & Trytten LLP;
18  Frederick J. Hickman; John Chakmak; Buxbaum
19  & Chakmak; and
20              Does from 1 through 10,
                inclusive Defendants,
21

) Case No.: SACV 08-01274 DOC (MLGx)
)
) **Verified 1st Amended Complaint for**
)
) QUIET TITLE; EQUITABLE & INJUNCTIVE
) RELIEF & DAMAGES;
) **ARISING FROM:**
) ORGANIZED FINANCIAL CRIMES &
) CONSPIRACIES UNDER COLOR OF
) LAW; LEGAL MALPRACTICE;
)
) **DEMAND FOR JURY TRIAL**
)
) **Honorable David O. Carter**
)

22  Plaintiff, Kareem Salessi ("Salessi" or "Plaintiff", or "I"), hereby brings this action for
23  damages and relief against the Defendants (defined *infra*) for violations of numerous
24  Federal and California laws, including: *Title 42 U.S.C. §1983;* (Title 18 U.S.C. §§1961-
    1968), the "RICO Act", and for violations of California state common law. Plaintiff, on
25  behalf of himself, and on behalf of those similarly injured California, and United
26  States Communities, as a private Attorney General, pursuant to Consumer Legal
27  Remedies Act (CC §§1750:1780), complains and alleges upon information and belief,
    except as to those paragraphs that are based on personal knowledge, as follows:
28                                        1

SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT     FILED 3-11-2009

## I.    THE CASE IN A NUTSHELL:

**1-**    In late 2002, Salessi was fraudulently made to believe that he had
been sold a house in  County, Ca. The fraudulent sale had taken place
with sophisticated criminal conspiracy, and racketeering, of a few
corporate defendants, and individuals, with judicial histories of document
forgeries pertaining to realty and related loan transactions. In this case,
among numerous documents, defendants forged all the loan documents,
as well as the GRANT-DEED of the subject property, and recorded some
of those documents. In contemplation of the above frauds, defendants
converted $55,000. of Salessi's funds, which funds they had deceived
Salessi to place in their fiduciary custody. All the documents, recorded, or
unrecorded were void *ab initio*, and remain void to this day.

**2-**    As a result of the above forgeries Salessi obtained only **"Color of
Title"**, and not **"legal title"** to the property, and was deceived to pay over
$220,000. of payments to defendants, in the name of down-payments,
mortgages, and property taxes, for over five years. Finally, in the summer
of 2007 Salessi discovered some of the 2002 forgeries, including that the
grant deed had been forged in 2002. Salessi immediately gave notice to
bank defendants warning them of the fraud in factum in the creation of the
loans, and that since the Grant-Deed was forged, that automatically
nullified all purported deeds of trust in the bank's name, and that Salessi
was legally entitled to stop payments and ask the court to quiet his title.

**3-**    Bank Defendants, having played an active role in the forgeries,
refused to take action and began a secretive, and fraudulent, Non-Judicial
Foreclosure scheme, by recording their first "NOTICE OF DEFAULT AND

2

SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT        FILED 3-11-2009

ELECTION TO SELL" on 12/31/2007. Meantime, per the suggestion of OC-Recorder, Salessi tried to have the forged documents expunged with a court order. This suggestion was confirmed by the Bank's former counsel Mr. Rippy, whereafter Salessi tried to expunge the forged recorded documents, in Case #1 in an Ex parte motion. The court stated it lacked jurisdiction, owing to pending appeal in the case and suggested that Salessi immediately file a quiet title action. To preserve plaintiff's interest in the property, Salessi first recorded a "NOTICE OF INTENT TO PRESERVE INTEREST" at the OC-Recorder (**Exhibit-A**)[1]. This document rendered the title of the property unmarketable, per ***Civil Code § 880.020*** **(Marketable Record Title Act).**[2]

**4-**    In early January 2008, Salessi called the bank in San Antonio, Texas, whereupon, a recorded conversation, the bank's agent told Salessi that the above notice had also been sent to the Ortizes, the fraudulent sellers of the house, and that they had called and were told that the property's title was still in their names and had never transferred to Salessi, confirming that Salessi had in fact "never bought the house". This conclusion was also reached by the Hon. Judge Pacheco, of the Harbor Justice Center (Jamboree), in Case #3 after only minutes of hearing about the case.

**5-**    In May of 2008, the bank's San Antonio office told Salessi that due to the investigations of their legal department the foreclosure process had been halted. However, this had been a new fraud in order to catch Salessi off-

---

[1] ALL THE EXHIBITS AND FOOTNOTES ARE INCORPORATED HEREIN WITH THIS REFERENCE.
[2] *Duncan v. Ledig* (1949) 90 Cal. App. 2d 7, 12 [202 P.2d 107]

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**    **FILED 3-11-2009**

guard by posting a "NOTICE OF TRUSEE SALE" on the entrance of the
house on 5/21/2008, in the heat of Salessi's trial in case # 05CC00124.

**6-** Golden West began to auction the house, whereupon Salessi filed Case
#2 to enjoin the wrongful sale. Impartial Defendant Judge Monroe prejudiced
Salessi by siding with the bank *ab initio* dismissing them at inception, denying
injunction, and instructing the bank to sell the house A.S.A.P., whereupon,
despite countless illegalities, defendants Hickman/AFRCT, Fidelity, and the
bank conspired in registering, executing, and recording a sham credit bid,
following a sham auction.

**7-** Bank filed an Unlawful Detainer Action ("UD") to take possession of
the house. Salessi filed this complaint to permanently enjoin bank from
their UD-Action and to quiet title against defendants, for damages and
equitable relief.

**8-** Since 2008, several civil class actions, and criminal complaints were
filed against World Savings, and Wachovia. Since July 2008, Salessi
began mailing lawsuit, and additional, documents to the United States, and
California, Departments of Justice ("DOJ"), namely to: Operation Malicious
Mortgage ("OMM"), and to the California Attorney General ("AG"). In Nov.
2008, DOJ announced its criminal investigation of the banking defendants.
The DOJ investigation, within World Savings/Golden West and Wachovia,
will in all likelihood result in criminal indictments of those individuals unable
to gain amnesty for their participation in this illegal conspiracy. Salessi
believes, namely Herbert and Marion Sandler, the two former founders of
the bank, and a few dozen executives, will likely be indicted. This  will be
similar to the indictment of Angelo Mozilo, and his organized crime family

4

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT      FILED 3-11-2009**

of executives, who are being indicted after over one year of DOJ investigations and civil litigations against Countrywide's nationwide criminal enterprise.[3]

**9-** However, neither these nor any actions arising from investigations initiated by any government entities will result in the compensation of countless defrauded California, and nationwide, victims of the bank/s for the injury suffered due to Defendants' illegal conduct. It is this remedy and other remedies for which Salessi herein prays, on his own behalf, as well as on behalf of over one million defrauded homebuyers who have fallen victim to the criminal conspiracies of this bank, with all other banks, and with related government insiders, as individuals, or as entities, such as Henry Paulson who is publicly known to have facilitated the colossal plunder of the U.S. Treasury, in favor of the criminal credit enterprise, just before leaving office. Mr. Paulson is also known to have directly, and through his agents, blackmailed U.S. Congressmen to vote for the Bail-out bill or have martial law in the country as of early Oct. 2008.

**10-** Salessi on his own behalf and, as a private attorney general, on behalf of the similarly injured & betrayed, California, and the United States communities, seeks one or more of the these remedies, and/or in the alternative: quiet title; rescission & restitution; injunction; damages, for the causes of action herein alleged.

---

[3] CBS-60 Minutes, on 2/20/09, documented World Saving's organized crime, featuring Paul Bishop

SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT    FILED 3-11-2009

## II.    **JURISDICTION & VENUE:**

**11-**        This court has original subject matter jurisdiction pursuant to
The Civil Rights Act, 42 U.S.C § 1983 *et seq.*; Federal Deposit Insurance
Act (FDIA) 12 U.S.C.A. §1823; The United States Banking Code, 12
U.S.C. §3754 (d) (1);  28 USC § 1738; *15 U.S.C. §§ 45(a) and
53(b)(FTCA);* 18 U.S.C. §§1961-1965 (RICO); 28 USC § 2361
(Interpleader Act); United States Constitution, among others; and pursuant
to 28 U.S.C. § 1331.

**12-**        This Court has personal jurisdiction over the parties in this
action by the fact that Defendants are either individuals who reside in this
District within California; are corporations duly licensed to do business in
California; or are individuals affiliated to the said corporate defendants.

**13-**        Venue of this case is proper in the Central District of California,
Southern Division,  pursuant to 28 U.S.C. § 1391(a) because Defendants
conduct business in this judicial district and all or a substantial part of the
events, forgeries, or omissions giving rise to the claim occurred in this district.

**14-**        This court also has supplemental jurisdiction on state causes of
action pursuant to  28 U.S.C. § 1367.

6

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT      FILED 3-11-2009**

## III.    **PARTIES:**

**15-**        Plaintiff Kareem Salessi ("Plaintiff" / "Salessi" / "I") is an
individual, and is now, and at all times relevant to this Complaint was, the
owner of an undivided interest in the real property commonly known as
28841 Aloma Ave., Laguna Niguel California ("Property"), with an Assessor's
Parcel Number: 637-124-12 in the  County Hall of Records. Salessi is not an
attorney, therefore, his pleadings must be liberally construed and on the
basis of its merits.

**16-**        *Unnamed Co-Conspirators:* At all relevant times, other
corporations, banks, investment companies, insurance companies, and
other individuals and entities willingly conspired with Defendants in their
unlawful and illegal conduct against the Plaintiff. All averments herein
against named Defendants are also averred against these unnamed co-
conspirators as though set forth at length.

**17-**        *Agents and Co-Conspirators:* At all times relevant to this
complaint Defendants, and each of them, were acting as the agents,
employees, and/or representatives of each other, and were acting within
the course and scope of their agency and employment with the full
knowledge, consent, permission, authorization and ratification, either
express or implied, of each of the other Defendants in performing the acts
alleged in this complaint.[4] Salessi believes that the banks' defense
attorneys, and in house counsel, should mostly be implicated.

---

[4]  In Los Angeles v. Wachovia, et al, Federal agent Charles Anderson is quoted in ¶ 107:
        "Ultimately, the same kinds of acts can give rise to criminal conspiracy counts against
        attorneys. I would not be surprised to see bankers and lawyers go to jail."

7

---

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT**        **FILED 3-11-2009**

**18-**      Each of the Defendants have participated, as members of the

conspiracy, and have acted with or in furtherance of said conspiracy, or

aided or assisted in carrying out the purposes of the conspiracy, and have

performed acts and made statements in furtherance of the conspiracy and

other violations of California, and federal, laws. Each of the Defendants

acted both individually and in alignment with other Defendants with full

knowledge of their respective wrongful conduct. As such, the Defendants

conspired together, building upon each other's wrongdoing, in order to

accomplish the acts outlined in this complaint. Defendants are individually

sued as principals, participants, and aiders and abettors in the wrongful

conduct complained of, the liability of each arises from the fact that each

has engaged in all or part of the improper acts, plans, schemes,

conspiracies, or transactions complained of herein.

**19-**      Plaintiff is informed and believes, and thereon alleges that

defendant CAMERON MERAGE ("MERAGE") is, and at all times

mentioned herein was, an individual authorized to do business under the

laws of California, and conducting such business in the County of ,

California, and that defendant MERAGE is the alter ego, owner, principal,

and sole-proprietor of FIRST TEAM REAL ESTATE, Coast Cities Escrow

and their affiliated realty and lending ventures, and that all the business

practices of his companies are guided under his direct supervision.

Merage entities are not franchises, and are run under his direct

supervision, operating as networked RICO enterprise, with dedicated

8

forgery centers.[5] & [6] Plaintiff believes that Merage has operated one of the most integrated organized crime real-estate sales, and lending related, operations in Southern California in the last fifteen years.

**20-** Plaintiff is informed and believes that defendant MERAGE, between 2000 and 2005 managed to transform his business into a multibillion dollar enterprise largely through fraudulent business practices, including bulk forgeries of real estate and loan documents, as in the Salessi's case, where practically everything was forged by Merage defendants, and or with their instructions. A large number of competent real-estate  County lawyers have at some point defended Merage, who has created a most powerful network of attorneys, public officials, and county insiders who provide him with special services upon demand.

**21-** Defendant Commonwealth Land Title Insurance Company ("Commonwealth") is a Pennsylvania corporation authorized to do business in California and authorized to engage in, and at all times mentioned in this Complaint was engaged in, the title-insurance business as a title-insurance company.

**22-** Defendants PATRICK F. ORTIZ and DEBRA A. ORTIZ (collectively "ORTIZ"/ "Ortizes") are, and at all times mentioned herein relative to this complaint, were sellers of the real property in dispute, which property is located in the county of , California. All the acts complained of Patrick ORTIZ were performed in his individual capacity and on behalf of the marital community. The Subject Property (ALOMA) is located in the

---

[5]  ACCORDING TO REQUESTS FOR ADMISSIONS NOT RESPONDED TO OSC CASE #04CC11080
[6]  ALL THE FOOTNOTES & EXHIBITS ARE INCORPORATED HEREIN WITH THIS REFERENCE

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**    **FILED 3-11-2009**

County of , California whose common address is: 28841 ALOMA AVE. LAGUNA NIGUEL, CA. 92677.

**23-** Defendant Fidelity National Financial ("Fidelity"), is the parent company of numerous title insurance companies, including Fidelity Title Insurance; Chicago Title Insurance, etc., all of which companies are corporations authorized to do business in California, and are conducting such business in the County of , California. Fidelity also provides expedited foreclosure services to lenders by the way of dozens of other companies such as Fidelity Sales and Posting Service, also know as ASAP, a defendant in Case #2. Because of the exercise of dominion and control of Fidelity over its service company ASAP, and its involvement in a parallel lawsuit, OSC Case # 05CC00124, plaintiff is entitled to name this parent company as the defendant here. Salessi believes Fidelity is responsible for the theft of over one million houses since 2006.

**24-** Defendant Coast Cities Escrow ("COAST") is, and at all times mentioned herein was, a corporation authorized to do business under the laws of California, and conducting such business in the County of , California, and under the auspices of First Team Real Estate ("FIRST").

**25-** Ann E. Skinner ("Skinner") is, and at all times mentioned herein was, an individual authorized to do business under the laws of California, and conducting such business in the County of , California, in the employ of  COAST and Merage.

**26-** Defendant Western Surety Company ("Surety") is an Illinois corporation authorized to do business in California and authorized to

10

engage in, and at all times mentioned in this Complaint was engaged in the business insuring errors and omissions, as a bonding company.

27-    WORLD SAVINGS, INC. is a California corporation licensed to do, and is doing business in California. At all relevant times hereto, WORLD SAVINGS, INC., was and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans that are the subject of this Complaint. WORLD SAVINGS, INC. transacts business in Orange County, California and at all relevant times promoted, distributed, and sold the Option Arm loans that are the subject of this Complaint throughout the United States, including Orange County, California. WORLD SAVINGS, INC. has significant contacts with Orange County, California, and the activities complained of herein occurred, in whole or in part, in Orange County, California.

28-    Defendant, WORLD SAVINGS BANK, FSB, was and is a business organization form unknown. Plaintiffs are informed and believe and thereupon allege that Defendant WORLD SAVINGS BANK, FSB is a corporation; that Defendant WORLD SAVINGS BANK, FSB is a partnership; and that Defendant, WORLD SAVINGS BANK, FSB, is a division of Defendant, WORLD SAVINGS, INC.

29-    Defendant Golden West Savings Association Service Co. ("Golden") is a California corporation licensed to do, and is doing business in California. Golden is purportedly the shell holding company of World Savings, under all of its known names, and is named as TRUSTEE in the "DEED OF TRUST" documents procured by World Savings.

11

**30-**    Defendant, WACHOVIA CORPORATION ("WACHOVIA"), is a North Carolina corporation licensed to do, and is doing business in California. At all relevant times hereto WACHOVIA was and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans that are the subject of this Complaint. WACHOVIA transacts business in Orange County, California and at all relevant times promoted, distributed, and sold the Option Arm loans throughout the United States, including  County, California. WACHOVIA has significant contacts with County, California, and the activities complained of herein occurred, in whole or in part, in  County, California.

**31-**    Defendants, WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB, WACHOVIA MORTGAGE CORPORATION, and DOES 1 through 10, shall hereinafter be referred to collectively as "Bank Defendants."

**32-**    Plaintiff is informed and believes, and thereon alleges that defendant William M. Monroe ("Judge Monroe"/"Monroe") is an individual, and at all times mentioned herein was, an individual authorized to do business under the laws of California, and conducting such business in the County of Orange, California, in the employ of the State of California as an elected judge serving an eight year term in the  County Central Court. Defendant Monore is herein sued as an individual, acting without judicial capacity, but under the color of such capacity, for his personal interests, or bias, not as a disinterested judicial officer, working in the interest of the injured California Community.

**33-**    Plaintiff is informed and believes, and thereon alleges that defendant ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP, aka

12

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT   FILED 3-11-2009**

AFRCT, ("AFRCT"), is a Limited Liability Partnership of professional
attorneys, and at all times mentioned herein was authorized to do
business under the laws of California, and conducting such business in the
County of , California, with its partners and associates as licensees of the
State of California and in the employ of Wachovia, and its affiliates.

**34-**      According to their conditional licenses, AFRCT's licensed partners,
and associates, must practice law in strict compliance with California, and
Federal, rules of professional conduct; California's Business and
Professions Codes ("B & P") and Federal Rules of Civil Procedure, among
others, breach of which must be sanctioned once reported to, or upon
occurrence by: the State Bar of California; California Attorney General;
County District Attorney, among others. All those named above have
refused to take any action against illegal conducts of AFRCT in the course
of litigating Case #2, which acts include perjury and subornation thereof.

**35-**      Plaintiff is informed and believes, and thereon alleges that
defendant Frederick J. Hickman ("Hickman"), with Calbar # 124406, is an
individual licensed associate/partner attorney in the employ of defendant
ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP, aka
AFRCT ("AFRCT"), and at all times mentioned herein was authorized to do
business under the laws of California, and conducting such business in the
County of , California, with the partners and associates of AFRCT, and in
the employ of Wachovia Bank, and its affiliates. Defendant Hickman is
herein sued as an individual licensed professional attorney, acting as an
"officer of the court", not as a "fraudster against the court", and is bound to

13

all the rules of professional conduct and statutes binding AFRCT's
attorneys, as set forth above.

**36-**    Plaintiff is informed and believes, and thereon alleges that
defendant Michael Goldberg is an individual licensed attorney in the
employ of defendant banks in the State of Texas, and that he is a vice-
resident of former World Savings/Golden West and later Wachvia, and as
their corporate counsel. He is herein sued for his aiding and abetting
conspiracies with the defendant banks, as well as for giving false
testimony under the penalty of perjury, and for the subornation of perjury.
All the causes of action against the bank defendants are automatically
deemed alleged against this defendant, retroactively dating to Nov. 2002.

**37-**    Defendant County of  ("OC") is a municipality corporation, as is
herein sued as a municipality, which is strictly liable to comply with
California and Federal laws in its routine operations, however, in reality
OC is a self-serving, and self-regulating, private enterprise engaged in the
theft of peoples personal and real properties, in conspiracy with title
companies and banks. OC is formed of numerous entities, including: OC-
Sheriff's Dept.; OC-Hall of Records; OC-Tax Assessor/Collector; OC-
District Attorney's Dept. all of which have long standing negative
reflections in the public eye. Since 2006, over 100,000 of OC-homes are
believed to have been stolen with aiding and abetting, or the reckless
disregard, of these defendants.

**38-**    Each of and all of the aforementioned defendants are responsible
in some manner, either by act or omission, strict liability, fraud,
racketeering, deceit, fraudulent concealment, negligence, respondeat

14

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT**    **FILED 3-11-2009**

superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by the conduct of Defendants.

**39-** Each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

**40-** At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

**41-** Plaintiff is ignorant of the true names and capacities of the defendants named in this complaint ("Complaint") as DOES 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when such are ascertained.

**42-** **END OF PARTIES**

15

## IV.    *FRAUDULENT CONCEALMENT*[7]

**43-**    California Assembly Bill No. 489, chapter 732, states inter alia:

> **"...Existing law provides that willful violations of
> provisions governing savings associations, real estate
> brokers, and residential mortgage lenders are crimes."**

**44-**    Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conducts from Plaintiff/s. One of the secrets of long term success of serial financial frauds, as in here, is successful cover-up, concealment, and/or silencing of opponents and whistleblowers who endanger its operations.[8]

**45-**    Plaintiff did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were engaging in the illegal and unlawful conduct as alleged herein until shortly before 2008. Nor could Plaintiff have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection. The conspiracy was by its nature self-concealing.

**46-**    Plaintiff could not have discovered the unlawful conduct at an earlier date through the exercise of reasonable diligence because of Defendants' active and purposeful concealment of their unlawful activities.

---

[7]This applicable section adopted from: *Los Angeles v. Wachovia*, et al. BC394944; 2008 WL4279236
[8] Elliot Spitzer, the famed New York Governor, on 2/14/08, had published an article on this subject in Washington Post. Days later he was disgraced. Google: "Greg Palast on Elliot Spitzer"

16

Defendants engaged in a successful and unlawful scheme to defraud not only this plaintiff, but over 250 million Americans, as well as honest members of state and federal governments, whereby defendants capitalized on selected insider government officials as aiders and abettors, in the furtherance of their criminal schemes.

**47-**    Defendants affirmatively concealed their frauds in countless ways, including in the following respects:

    a. By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

    b. By engaging in secret meetings, and wire communications, in order to further their unlawful and illegal scheme to maximize the ballooning of their unfunded, and unlimited, credit transactions, by means including the mass-production of mortgage loans through forgeries, and recordations, to originate and sell countless unfunded loans;

    c. By fabricating un-backed financial derivatives of over 100 times the amounts of their already hyper-inflated mortgage loans;

    d. By fixing the fabrication of financial derivatives, and trading processes, in the financial markets; allocating amongst themselves the markets therefor; cashing out, and moving offshore, maximum ill-gotten plunders with their manipulations of the financial systems by whatever illegal means.

    e. Stealing millions of houses by fraudulent foreclosures, supported by county, state and federal offices;

17

**48-**     At all times mentioned herein, the banking, title and real-estate, defendants, and each of them, were engaged in the business of promoting, marketing, distributing, and selling the predatory loans that are the subject of this Complaint, throughout the United States,  Orange County, California. The said predatory loans had a combination of several of these brand-names:  Pick-A-Payment; Easy-Loan; Option Arm; Piggyback; Killer-loan; Neg-Am; Shocker; Jumbo; Interest Only; among others. Only the loan-trade insiders could identify which types of loan documents were offered to targeted individuals, as some of the above names were non-public, insider-code names, such as "THE SHOCKER" which was intended to paralyze the borrower, and force him into default, by the sudden doubling of his monthly payments.[9]

**49-**     Successful cover-up of their crimes by preventing public officials from investigating their criminal frauds, such as causing Orange County Sheriff's department to intentionally, and repeatedly, refuse to take any actions on Salessi's criminal forgery complaints against named defendants, in this and in Case #1, and similar influences on the OC-District Attorney's Office have join in the refusal to take action, resulting in OC's collective ratification of the forgeries and frauds here, where their Recorder's/Assessor's office is an indispensable partner-beneficiary of the criminal document recordings, which have led to the deprivation of this plaintiff's civil rights, in theft of real and personal properties, pursuant to the violations of, inter alia, *Title 42 U.S.C. §1983*, civil due process rights.

---

[9]  See the already settled lawsuit of California v. Countrywide, 2008.

18

**50-**      As a result of Defendants' fraudulent concealment of their

conspiracy, Plaintiff asserts the tolling of any applicable statute of

limitations affecting the rights of action of Plaintiff, and the similarly injured-

in-fact parties, who number in the millions, across the country. Pursuant to,

inter alia, *CC §3294(b)(3)*, RICO, and CLRA, plaintiff and the similarly

injured-in-fact parties are entitled to punitive damages against defendants.


*///*


*///*


*///*


19

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT      FILED 3-11-2009**

## V.

## ORGANIZED CRIME TARGETS PLAINTIFF SALESSI

**51-**    In 2005 Salessi filed the OSC Case # 05CC00124 against several defendants including Fidelity National Financial, a defendant in this action.

**52-**    That lawsuit involved the theft of a 4.4 acre commercial land in the city of Redlands, belonging to Salar Investments, Inc. Salessi's firm.

**53-**    In one of the first hearings Salessi tried to obtain a lis pendens, or a writ of execution, none of which was granted, even though it was mandatory in a QUIET-TITLE ACTION. During a recess, the counsel appearing for First American Title Company ("FATICO") threatened Salessi for having sued such large companies as his client FATICO, and to the effect that Salessi would be sorry for having done so, and then tried to bet $1,000. that I would not be granted a writ, or anything else, and that they were going to build a $25,000,000. housing project on it and that no body would be able to stop it. In fact I was unable to stop them, as the judge sided with them, and dropped them out of the case even though their demurrer lacked merit and was untimely filed. Fidelity, however, remained in the case and was never dismissed.

**54-**    Salessi unfortunately, and by accident, hired Lewis Brisbois Bisgard Smith ("LBBS"), a major defense law firm, to take over the case from him. They betrayed Salessi and made a deal with Fidelity/Chicago Title to not include them in an amended complaint, despite the fact that they had made a judicial admission, in August 2002, that the property theft had

20

SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT    FILED 3-11-2009

been occurred as a result of their negligence and that they take the
responsibility to pay for it and that they will have to pay the buyers the
whole amount of the policy, namely $550,000. and take back the property
and return it to Salar's rightful ownership.

55-    After the above writ-hearing, Salessi realized to have been under
constant private surveillance, which he believes to have been orchestrated
by Fidelity, and possibly, in conspiracy with FATICO, and their clients,
namely Ridgecrest 64, and Vineyard Bank. Often times they overtly made
Salessi know that they were following him, as in a form of extortion, and
harassment.

56-    Soon after the case was set for trial, the surveillance became
intense, especially on some days, making Salessi suspect that something
must have occurred. Soon thereafter Salessi checked the public records to
find out that his brother, defendant Nasser in that action, had just sold a
condominium which had been purchased with some of the proceeds of the
illegal land sale in 2002, and now cashed around $400,000. Salessi's new
counsel, Bruce Weiner, wrote a letter to Mr. Mokri, esq. representing
Nasser, demanding the sequestrations of the funds. Two months later
Nasser purchased a $1.3 million house in the name of father Ahmad Ali
Salessi (A.A.S.) paying as down-payment the $400,000. from the
fraudulent sale of the condominium. The fraudulent loan had been
provided by no one other than World Savings.

57-    Salessi believes that he had been also targeted by World Savings
since the lawsuit in 2004, and that through banking, credit-rating, and
other sinister databases, World Savings, and title companies, had placed

21

Salessi on their "HIT-LISTs" in order to inflict as much damage as possible
and to exhaust him to give up his lawsuits against them. When someone
applies for a mortgage, or any type of credit, his application becomes
available to everyone in this organized crime network and the predatory
lenders, by offering the best rewards to the brokers filing the applications,
target and hunt down their most vulnerable victims, as in here. In the
former case the bank was fully aware of Salessi's land lawsuit.

**58-**    Salessi believes that with this RICO-enterprising network of the
financial enterprise, World Savings targeted this stolen money from
Salessi's company, Salar, and hunted down his father's application for the
$900,000. loan which they originated to him, while laundering $400,000. of
cash which was not his. Salessi found out about the loan and purchase of
the Timberline house, around a month later, whereupon meeting World
Savings local fraud investigator, Mr.      on 2007, giving him details of what
happened with documentation and that they should immediately take
action and cancel the transaction and return the money to Salessi, or at
least to the court's custody. However, they took no action.

**59-**    In case #1 (ie: 04CC11080), the bank knew that Salessi was
financially unable to retain counsel at the time, and that if Salessi came in
possession of significant funds, like the above $400,000. he would retain
competent counsel and knock out defendants in both the lawsuits.
Therefore, it was in the bank's interest to do everything illegal at their
disposal to prevent Salessi from receiving funds. For the same reasons,
Salessi believes that the bank fraudulently raised interest-rate levels of the
fraudulent loans to make them unaffordable, as quickly as possible, and

22

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT      FILED 3-11-2009**

thus to exert more influence in weakening Salessi financially. Therefore, the bank laundered the $400,000. with which they must have raised credit lines accumulating to over 100 times of the above cash amount, namely $40 millions of credit line.

**60-**    Salessi believes that the bank, having had Salessi under surveillance, awaited for the right opportunity to catch Salessi off-guard with its fraudulent non-judicial foreclosure operation, and that they waited for Salessi's trial to commence in the land case 05CC00124, in mid-May 2008, and that once the trial began Golden West secretly recorded a "NOTICE OF TRUSTEE SALE" which they held back and intentionally first placed it on Salessi's door on 5/21/08, six days after the minimum statutory deadline, per CC §2924, at a time that Salessi was in the heat of his land trial, and with the malicious intent of cornering Salessi off-guard with no chance to bring a proper lawsuit to halt the fraudulent foreclosure.

**61-**    As a result of the foreclosure sale stigma Salessi could no longer concentrate and thus lost the trial, and in part owing to the incompetence of a last minute counsel who stepped in to help. This shock came in the midst of the fact that the bank had told Salessi no sale-date was on the horizon, owing to the forgery investigations by their legal department.

**62-**    The other actor involved in this recordation and timing was no one other that Fidelity National Financial, who still had Salessi under surveillance. Fidelity had recorded the fraudulent 2004 credit-line deed of trust, without warranty, since it had not been funded. Further, revolving credit-lines, as the bank alleges to have foreclosed on, are not sum-certain and are illegal to collateralize, such as with a deed of trust, on a realty,

23

since a deed of trust is on a loan with a sum-certain, not a revolver. This matter is extensively discussed in the body of the complaint.

**63-**    The hit-list targeting continues to date. Salessi still notices to be under surveillance at times, and was recently targeted by a new fraud of Wachovia, in the failed purchase of a car in the name of his wife, Ladan Fonooni ("Fonooni"). In this incident the Jeep dealership ("Dealership") prepared a credit-purchase of a Jeep with a pre-approved loan from BMW-Finance, and printed a tentative contract, with BMW-Finance printed on it. Next, Wachovia, having Salessi, and his family on their hit-list, saw the credit-application in the national credit data-base and contacted the dealership to give them the loan in return for a kickback, which they did. They sent the documents to Wachovia who forged them by stamping Wachovia Bank in several blank spaces, despite the fact that BMW-Finance was printed on the documents.

**64-**    Long before Wachovia's name surfaced, Salessi had cancelled the purchase owing to the noticeable fraud of the dealership, and within its cancellation period, and returned the car to the dealership, which had threatened Fonooni to pick it up. Under threats, Fonooni had picked up the car after a week at the dealership, whereafter the name of Wachovia surfaced with the first bill. Salessi had multiple telephone calls with the Wachovia Dealer service staff, most of which he recorded. They harassed the Salessi family for over a month and refused to either take the car or deal with the dealership, which was their accomplice. Finally, a manager called and promised to "…get the car off your hands…". Two months later , they sent a deficiency bill of $7,000, for having sold a $17,000. car in an

24

auction. This is a simple form of criminal predatory lending practice by the organized crime credit industry, and thereafter foreclosing and stealing the collateral. Salessi believes that the right investigation would surface that Wachovia never paid anything for the car in the first place, the same credit-lending story of the fraudulent mortgage industry.

**65-**     It is also notable that the dealership had forged the contract, in many ways, including by multiplying Fonooni's income, and crossing out "YES" as a response to "have you had a lawsuit against you?". Dealerships, and realtors, alike forge contracts for banks. The only difference is the larger size of fraudulent mortgage loans, as opposed to fraudulent car loans.

**66-**     On 1/13/09, defendant Hickman told Salessi that he knows about the Jeep case and that if it came to a lawsuit he will be defending that too. Of course, without such complicity of lawyers, organized crimes, as in here, would be short-lived. This is artfully stated by Prof. Howard Abadinsky in his classic book "Organized Crime", on page 9:

**67-**     "<u>The Lawyer as Consigliere:</u>

> *In the Godfather saga, the Irish-American attorney Tom Hagen servd as a consignliere for the Corleone Family. The president's Commission on Organized Crime (1985b:3-4) describes attorneys who appear to have played a similar role in real life. According to the Commission, there is a small group of attorneys who have become integral parts of criminal conspiracies, using their status as sworn officers of the court to advance the criminal purposes of these criminal organizations. It is clear that traditional organized crime and narcotics traffickers depend upon, and could not effectively operate without, these attorneys. [they] also have a network of tested auxiliaries to draw upon, including former police officers and investigators. These private investigators use their contacts within the investigative agencies to gather information to which they are not legally entitled."*

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT    FILED 3-11-2009**

**68-**      Salessi has observed not only defense attorneys, but even attorneys he personally retained, to have played such integral crime roles for the opposite side.

**69-**      Here, AFRCT/Hickman, the title insurance attorneys in Salessi's former case, and the bank's in-house counsel such as Michael Goldberg are all integral parts and parcels of conspiratorial frauds and racketeering. Prof. Abadinsky would be corrected to state that a <u>large group</u> of attorneys are involved in such criminal conspiracies, including their aiding and abetting after-the-fact, by putting up "**zealous defenses**".

**70-**      Salessi has been injured, and will continue to be injured by these defendants as set forth in this complaint until and unless this court brings them to face justice for the first time in six years.

## VI      <u>FACTUAL & LITIGATION HISTORY OF CASE</u>

**To preserve volume and simplicity this section is moved to (Exhibit-C) but is incorporated herein with this reference, as if set forth in full.**

26

## COUNT-1:

## QUIET TITLE; CANCELLATION OF FALSE INSTRUMENTS:
## SALESSI v. Patrick Ortiz; Debra Otiz; Golden West Savings; World
## Savings; Wachovia; County of Orange;

**71-** Plaintiff incorporates and re-alleges all allegations stated in the foregoing paragraphs, as if fully set forth herein.

**72-** As a result of the false and forged Grant Deed from Ortizes to Salessi and false and forged WORLD/GOLDEN Deeds of Trust, these instruments are void as a matter of law and the First and Second WORLD/GOLDEN Deeds of Trust do not, and never did constitute liens or security for the indebtedness represented.

**73-** The execution of forged deeds and loans; the transfers of said deeds and the sale of the property by defendants was without validity, defendants had no right, title, or interest in the property and had no right or authority to transfer and sell plaintiff's real property to themselves in a sham auction, and for no consideration; Nor did they have the right or authority to commit the unconstitutional acts which they committed to reach this advanced level of property theft.

**74-** The fraudulent transactions of defendants in Nov. 2002 did not pass title to plaintiff Salessi, whereas title was kept in the Ortizes. This has been proven, on the basis of facts and applicable laws, and remains uncontested to this day. However, Salessi did receive "color of title", since he was made to believe that he had been defrauded into purchasing the subject house. Having color of title, Salessi can now quiet title  based on

27

the doctrine of "Adverse Possession" because Salessi  fulfills all the five

statutory elements of California's Adverse Possession laws, that is:

**75-**        (1) The possession must be by actual occupation, open and

notorious, not clandestine; (2) it must be hostile to the plaintiff's title; (3) it

must be held under a claim of title, exclusive of any other right, as one's

own; (4) it must be continuous and uninterrupted for a period of five years

prior to the commencement of the action; (5) payment of taxes. Unger v.

Mooney, 63 Cal. 595, 49 Am.Rep. 100, and authorities therein cited.[10]

**76-**        Salessi fulfills all the above conditions cited in Unger above, and is

thus demanding a "**Fee Simple Title**" to the property, by the way of this

court's judgment, as against all defendants, and their purported interests, if

any, in the title to the property.

**77-**        That the court declare null and void the purported auction/take-

back action of the defendants, and the documents they recorded

purporting to grant Wachovia title to the property, and the County of

Orange to expunge it from the records, and further order the OC to

expunge all the other forged, and/or false documents of record on the

subject property.

**78-**        **_CLRA/Qui Tam_**: Salessi further seeks to quiet title of similarly

situated individuals, in California and accross the United States, as against

these bank defendants. Therefore, Salessi seeks fee simple title to be

awarded to similarly situated individuals. The justification for this prayer is

that:

---

[10]  **_STECKTER v. EWING et al._** (1907) 6 Cal.App. 761, 93 P. 286

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT**        **FILED 3-11-2009**

**79-**       Defendants have already received, from the federal government, valuable consideration exceeding the entire amount of the outstanding mortgages on their records, and are not entitled to also take the purported collateral pertaining to those mortgages. As a result of the bankers' plunder that took place during this decade, for which the banks were rewarded over $12 trillions, in only 5 months, the American population have become forcibly subverted, and indebted, to pay for at least the next 100 years. Without quieting title to injured-in-fact borrowers, similar to Salessi, it would be like selling them the house with the full inflated price in cash, but locking them out by force, which amounts to outright theft, and terror, <u>under the color of law.</u>



29

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**       **FILED 3-11-2009**

## COUNT-2:

## 42 USC § 1983 INJUNCTION AGAINST STATE COURT PROCEEDINGS, BROUGHT ABOUT UNDER THE COLOR OF LAW: SALESSI v. Golden West; World Savings; Wachovia; Fidelity;

**80-** Plaintiff incorporates and re-alleges all allegations stated in the foregoing paragraphs, as if fully set forth herein.

**81-** To prevent the frustration of the purpose of this action, it is imperative that this federal court enjoin defendants in their fraudulently engineered Unlawful-Detainer Action and to further enjoin the appellate proceedings of Case #2 (ie: OSC Case # **30-2008-00107531**), namely Case #'s G041464 and G040958, and more importantly Case #3 (i.e.: OSC Case # **30-2008-00091741**). Case #3, above is the wrongful Unlawful Detainer Action ("UD") is set for a Summary Judgment hearing on 3/13/09, and for trial on 3/23/09. In the UD-action defendants are trying to evict Salessi and his family from his house to which they never had any right, legal, or equitable, since they were the main beneficiaries of the frauds.

**82-** Case #3 would have never come about, had Salessi's former counsel filed a Quiet-Title, and Cancellation-action, for which he had been retained, and which would have probably already resulted in the quieting of title in Salessi, and never have come to Case #3 causing insurmountable pain and suffering for Salessi and his family.

**83-** Salessi is also entitled injunction against these RICO defendants pursuant to *18 USC §1964.* , on which basis Salessi requests this court exercise its injunctive powers against these defendants.

30

**84-**    This court has original jurisdiction to enjoin both proceedings, per

inter alia, the Civil Rights Act (42 USC § 1983)[11], and the *Interpleader Act*

(28 USC § 2361)[12], both of which empower federal courts to enjoin state

proceedings relating to the same property or debt. Both the UD-Action and

the pending appellate cases relate to the same subject property, pertaining

to its unlawful debts, its sham auction, and the systemic obstruction of

justice in state courts leading to both of the pending proceedings.

**85-**    The "Balance of Hardship Test"[13], which clearly tips in favor of

Salessi, necessitates the injunction since Salessi, with his two young

children and wife, have lived in the subject property for over six years and

his children have been attending the local schools during those years.

**86-**    On the other hand, defendants have had no hardships whatever,

and we will see that only theft of property has been on their minds. In late

September 2008, Wachovia came to the brink of receivership by the FDIC,

owing to its unauthorized plunder of billions of dollars in the form of

---

[11]   The Civil Rights Act (42 USC § 1983), though it contains no express authority, has been
construed to give *implied* authority for federal court injunctions against state proceedings.
[*Mitchum v. Foster* (1972) 407 US 225, 235, 92 S.Ct. 2151, 2158]

[12] The term "proceedings" includes "all steps taken or which may be taken in the state court or by
its officers from the institution to the close of the final process. It applies to appellate as well as to
original proceedings ... " [*Hill v. Martin* (1935) 296 US 393, 403, 56 S.Ct. 278, 282-283]

[13]  Even if the court is uncertain of the moving party's likelihood of success on the merits, a TRO
may still issue if the moving party convinces the court that the balance of hardship tips in its favor.
*See Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir.2003)
The standard for issuing TROs and Preliminary Injunctions is the same. *See Lockheed Missile &
Space Co., Inc. v. Hughes Aircraft Co. .*, 887 F.Supp. 1320, 1323 (N.D.Cal.1995). A party seeking
injunctive relief under FED. RULE CIV. P. 65 must show either (1) a combination of probable
success on the merits and the possibility of irreparable harm, or (2) that serious questions are
raised and the balance of hardships tips sharply in the moving party's favor. *Sun Microsystems,
Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir.1999).

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**    FILED 3-11-2009

unauthorized overdrafts from its account with the Fed-System. Its stock price reached Zero, whereupon it's trading was halted in order to preempt a run on the bank, and its immediate receivership. Eventually Wells Fargo was forced to take it, with handouts amounting to over $100 billions, by the Fed-System, the FDIC & the IRS. The amounts received by the defendants have not been disclosed, but are said to be exceed more that double the outstanding mortgages inherited from World Savings/Golden.

**87-** To materialize the Wells Fargo deal, the FDIC, the Fed-System, and the IRS, engineered illegal payments to Wachovia's stockholders, as compensation for their worthless stocks, since through a court-order the shareholders had enjoined Wachovia's takeover. The suit was for the fraud of directors, for their ongoing secretive dealings, in the final looting of Wachovia's remains. The end result was that more than the face amount of the total outstanding mortgages of Wachovia/Golden West was paid secretly by the IRS, the Fed-System, and the FDIC, while the banks continue to steal the houses whose mortgages have already been cashed, without the people's knowledge or consent.

**88-** The above Wells-Fargo takeover/scam also reduced Wachovia directors' potential exposures to new battles, having recently settled a $150,000,000. RICO-money laundering lawsuit in Pennsylvania.[14]

**89-** Salessi, thus prays for injunctive relief against defendants. The court may grant injunctive relief as part of the judgment quieting title to protect the owner against a multiplicity of suits by adverse claimants. An

---

[14] 150 MILLION DRUG MONEY LAUNDERING CASE AGAINST WACHOVIA. SEE (EXHIBIT-H)

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT      FILED 3-11-2009**

injunction may be granted whenever needed to effectuate the relief

granted in a quiet title action. As a part of the relief the court has the power

to cancel improper instruments which cloud title to real property. Here the

instruments to be cancelled are everything recorded, or unrecorded, by the

defendants since 2002.

**90-**    Injunctive relief is necessary for plaintiff's family to feel safe and

live in a peaceful possession of his home, free from the ongoing acts of

terror by the defendants, <u>under the color of law</u>. Plaintiff is thus asking the

court for a preliminary, or permanent, injunction against defendants'

fraudulent possession claims to the property. The proceedings resulted

from the conduct of the defendants in both Case #1, and Case #2, under

the color of California litigation related laws, whereby defendants manged

to deprived this self-represented plaintiff from the due process of law, to

have his day in court, and by preventing both cases to reach trial.

**91-**    The bank is now trying to do the same in Case #3, that is to

prevent a trial, because it sees no chance of success before an impartial

jury. In Salessi's lawsuit, litigation gaming of defense counsel has been

extremely blatant, including forgeries of documents by counsel, all of

which have been fully supported by two judges, namely Judge Gray, and

Judge Monreo. In addition to that, the gaming of the legal process in case

#2, by Judge Monroe himself, who having lost all jurisdiction, proceeded to

conspire with defendants to auction plaintiff's house, and thus to steal it, all

under the color of state law.

**92-**

**93-**

33

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**    **FILED 3-11-2009**

## COUNT-3:

## VIOLATIONS OF FEDERAL & STATE LENDER LAWS:

### SALESSI v. Golden West; World Savings; Wachovia; AFRCT; Hickman; Fidelity;

**94-**   The allegations contained in all the above paragraphs, inclusive are incorporated in this cause of action.

**95-**   Salessi brings this cause of action on his own behalf and on behalf of the California and the United States Communities, as a private attorney general, applying the said claims, on behalf of similarly injured-in-fact plaintiffs against these bank defendants, when and if the bank was not the physical, and legal, holder/beneficiary of the mortgages it claims to own:

**96-**   The claims of defendants, Wachovia Mortgage, F.S.B. and Does 1 through 10 are uncertain in that their purported Trustee's Sale was invalid and barred under the doctrine of *"Ultra Vires"* on the grounds that (1) GOLDEN WEST SAVINGS ASSOCIATION CO., as the foreclosing Trustee was not duly appointed pursuant to *12 U.S.C. Sec. 3754 (d)(1)* of the U.S. Banking Code, (2) Wachovia Mortgage, F.S.B. was not the holder of the note as of the date of the foreclosure action was initiated, and was not a signatory to the Deed of Trust in which the purported power to foreclose is contained and as such lacked any authority to foreclose.

**97-**   The Trustee's Sale was also invalid and barred under the doctrine of "Ultra Vires" on multiple grounds, such as the fact that <u>no duly appointed beneficiary</u> was named, as mandated pursuant to California Civil Code *§2934(a)(b)*, and Title *12 U.S.C. Sec. 3754 (d) (1)* of the United States Banking Code, as there existed no holder of the purported note as

34

SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT    FILED 3-11-2009

of the date of the foreclosure, or at any other time, and that Wachovia was not a signatory to the purported Deed of Trust in which the purported power to foreclose was contained and as such Wachovia lacked any authority to foreclose, and Golden West lacked any authority to act as trustee in doing the acts it contemplated[15].

**98-** By examining, and comparing, the three documents attached herein as **(Exhibit-B)**[16], namely: the "NOTICE OF DEFAULT AND ELECTION TO SELL", "NOTICE OF TRUSTEE SALE" And the "TRUSTEE'S DEED UPON SALE". For Wachovia to have been a beneficiary of any purported foreclosed mortgage, it is mandatory that its name "Wachovia" appear in the first recorded document above, while the second document has neither Wachovia, nor World Savings, as the mandated beneficiary name, while the last document bears Wachovia's name as being in possession of the house. In fact a letter signed by Michael Goldberg, of the bank states clearly that Wachovia is acting as the servicer of the purported loan, (ie: not the holder, or the holder in due course), thus implying to have acted illegally after the date of the said letter, also in **(Exhibit-B)**. This detail had gone unnoticed by attorney Ross, among many other details, before filing Case #2.

**99-** In other recent lawsuits, World Savings continues to appear under the same name, while here it had interjected itself as Wachovia, and had chosen to commit further statutory violations, whereby without a

---

[15] **This argument is under the <u>false assumption</u> that the loans had not been fraudulent, or forged.**

35

substitution of trustee or substitution of beneficiary which is a precondition to any lawful foreclosure process, whenever beneficiary's name changes for any reasons.

**100-**   The law that the foreclosing beneficiary must bear the same name as the name of the note holder is established law, by inter alia, the well-known federal Judge Boyko opinion, which is herein attached as (**Exhibit-F**). The Boyko Opinion has been reaffirmed by the California's Judge Chin, and Bufford, in recent federal opinions. Therefore, on the basis of the foregoing, the purported auction-sale conducted by Wachovia on 7/15/08 was barred under the doctrine of "*ultra vires*" and is thus void, and must be declared null and void, and be ordered expunged.

**101-**   The acts of Wachovia in instituting its foreclosure sale was further barred under the doctrine of "ultra vires", based on the violations of, inter alia, the following United States Banking Codes:

- 12 U.S.C. Sec. 3755(a)(2)(A)  which forbids the institution of any foreclosure proceedings when a related judicial, or non-judicial, proceeding is pending. In this case an appeal was pending against World Savings, until after the purported auction sale;
- 12 U.S.C. Sec. 3760  which barred AFRCT's direct participation in the auction, and to instruct defendant Fidelity's auction agent <u>not to adjourn</u> his sham auction when he was served a document by Mr. William Mishlove, a process server, who observed Mr. Hickman and the auctioneer, before, and throughout their acts;
- 12 U.S.C. Sec. 3763 which barred the recoding of any transfer of title documents pertaining to rights of possession, while having in their possession the recorded uncontested title documents which have been encumbering the title since early 2008;
- 12 U.S.C. Sec. 3765   which barred Wachovia from any claims as it was not a bona fide purchaser, owing to all the above matters;
-

36

**102-** Owing to the nullity of the original purported notes, and trust-deeds, and the nullity of the assumption note and trust-deed, no new valid obligation was ever created and no holder, or holder in due course, ever existed. This is probably the reason for the bank's not to name any beneficiaries on their fraudulently recorded "NOTICE OF TRUSTEE SALE". The lack of beneficiary made the NOTICE completely void by itself.

**103-** The above stated lack of beneficiary name proves that the fraudulent NOTE, and its fraudulent DEED OF TRUST had not been acquired by, or transferred to, Wachovia in any way, thus violating the FDIA, 12 U.S.C. § 1823, thus taking the purported NOTE out of FDIA, and making it a nullity  as in: where the Court stated that § 1823 does not apply to every inquiry concerning an asset by stating: It does not apply when the court determines an asset is invalid for fraud or for breach of bilateral obligations contained in the asset. [17] *FDIC* @ 639.

**104-** Where the case further stated: In either case, under state law, the cause of action is extinguished before the FDIC ever acquired the asset (Filing No. 36, p. 8). This Court finds the magistrate's reasoning persuasive. Specifically, any cause of action against the defendant was extinguished prior to the declared insolvency of the bank[18].

**105-** In the Salessi Case, as quoted in the Percival case here, the bank had no valid instruments to foreclose on: (§ 1823(e) does not apply to instruments rendered void by real defense of fraud in the factum).[19]

---

[17] *FDIC v. Merchants National Bank of Mobile,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984),
[18] FDIC v. PERCIVAL 752 F.Supp. 313, 14 UCC Rep.Serv.2d 355
[19] *Langley v. Federal Deposit Insurance Corporation,* 484 U.S. 86, 89, 108 S.Ct. 396, 399, 98 L.Ed.2d 340 (1987)

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT**   **FILED 3-11-2009**

**106-**      The 2004 NOTE, and its DEED OF TRUST, even if properly

notarized and recorded, were nullities in several ways. First, the NOTE:

   a. replaced a none-existing former forged note, which note was
      never produced and was worthless;

   b. was supposed to assume a former fraudulent second
      "PIGGYBACK" mortgage note, which was never produced;

   c. was fraudulently switched with a new loan, as a refinance, thus
      violating all the banking, and interstate commerce laws,
      resulting in a brand new fraud charge against the bank[20], under
      the fraud in the factum cause of action, CC §1572, thus by
      itself, nullifying the purported note and its trust-deed;

   d. the above fraudulent refinance, discovered as a new fraud on
      1/6/09, whereby the bank violated *18 U.S.C. §1961(6)* for the
      creation of a new unlawful debt. Further, it violated *18 U.S.C.
      §1962* for its persistent attempts in the collection of the
      unlawful debt. Furthermore, defendants Hickman/AFRCT,
      Fidelity, Monroe, were all actively in violation of *18 U.S.C.
      §1962* for their RICO efforts in the collection of the new
      unlawful debt, whereupon defendant Monroe stated, on the
      record, multiple times that: "…Salessi has not been paying
      rent…" thus legislating from the bench, or presuming that it was
      his job to collect rent for the fraudulent bank.

---

[20] This detail was first revealed by defendant Hickman, on 1/6/09, after a hearing, whereafter Salessi had the
documents examined by a loan broker who told him that the creation of a new trust-deed amounted to a REFINANCE;

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**      **FILED 3-11-2009**

**107-**    Defendant bank violated *California Commercial Code § 3501(a)* by

its failure to make a demand for the payment of the fraudulent note/s,

since it knew they were not collectible, and further violated *§ 3501(b)(2)* of

the above code, by failing to establish its right to enforce the payment of

the purported note/s, that is <u>by producing the original/s of the note/s</u>, not

photocopies, or certified photocopies, or perjured declarations of their paid

staff, like defendant Hickman who is a hired gun and prepared to lie about

anything, and anywhere, for good money. As such, with these violations

none of the defendants brought to any courts the purported note/s at

issue, and have made no pretense that they hold the note/s. Under

California law, only the holder of a note is entitled to enforce it…see *Cal.*

*Com. Code §3301*.[21]

**108-**    Defendants violated California and Federal Evidence code,

including their failures to authenticate the copies of the DEEDS OF

TRUST in the following way, as quoted from Vargas, Supra:

> **A certified copy of a public record must be made "by the
> custodian or other person authorized to make the
> certification...."FED.R.EVID. 902(4). In addition, the certification
> of a domestic document must comply with paragraph (1) (for
> documents under seal) or (2) (for documents not under seal) of
> Rule 902. If the document is not under seal (as appears in this
> case), the signature must be "in the official capacity of an officer
> or employee" of a governmental entity qualifying under
> paragraph (1). Finally, the certification must include a
> certification under seal, made by "a public officer having a seal
> and having official duties in the district or political subdivision**

---

[21]  Bkrtcy.C.D.Cal.,2008. In re Vargas 396 B.R. 511

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**    **FILED 3-11-2009**

of the [certifying] officer or employee" that the signer "has the official capacity and that the signature is genuine." All of this is missing from the purported certification. Thus, the court must assume that Ms. Urquijo has no authority whatever to certify the deed of trust. Here, the authenticity of the deed of trust is disputed by the debtor. Presumably in consequence thereof, MERS has declined to move its admission into evidence. Id.

**109-** In the related Salessi cases, nowhere have the defendants been able to produce such authentications, or certifications. Thus this court, or any other court, must presume, as in Vargas above, that their purported deeds are fraudulent and void, owing to their frauds in the factum. In fact now, that the County of  is also a defendant in this action, it will be compelled to either authenticate, or dis-authenticate (and hopefully expunge) the original forged deeds of trust and grant deeds, bearing the forged signature-acknowledgments of Ann E. Skinner, and her Notary Stamps, pursuant to the violations of PC §§115; 470:480. OC-Recorder had refused to do any of the above in Feb. 2008, upon their own discovery of Skinner's forged signatures and acknowledgments.

**110-** Bank defendants further violated FDIA (12 U.S.C. § 1823(e)) by applying it to a purported 2004 note which they declared to be a $100,000 revolving line of credit, while the FDIA applies only to sums certain. See[22]

**111-** They have repeatedly violated California Rules of Evidence, including *Evid. Code, §§ 1271; 635; 1400;* by fraudulently applying presumption which is not applicable to a revolving line of credit agreement. Even though the bank knows that no money was ever

---

[22] Remington Investments, Inc. v. Hamedani 55 Cal.App.4th 1033, 64 Cal.Rptr.2d 376,

40

advanced to Salessi they have gone against all laws to force the court to accept the contrary. The 2004 promissory note, had it been devoid of fraud in the factum, would have been only a conditional agreement to repay whatever sums might periodically be advanced to Salessi. The mere existence of this line of credit agreement does not support a presumption that the full amount of the line was ever advanced. For the same reason, the Promissory Note document would not, for example, be negotiable.[23] With this application in mind, Salessi has always declared that not even a $1 of this $100,000. had ever been advanced to him, thus the bank is at a complete loss, and in deep fraud, with their purported evidence.

*112-*    The fraudulent acts of these defendants as described above has been the proximate cause of Salessi's injuries, and those similarly injured, and ongoing emotional terror owing to the defendants illegal conducts. Therefore, Salessi seeks civil, and potentially criminal, remedies against these defendants and their officer, directors, and counsel. The sought remedies are also on behalf of thousands of families who have been similarly victimized by these defendants.

**113-**

**114-**

---

[23] **Id. @**

41

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**    **FILED 3-11-2009**

## COUNT-4:

## FOR EQUITABLE SUBROGATION

## SALESSI v. Commonwealth, Skinner, Coast Cities Escrow; Cameron Merage; County of ; Golden West; World Savings:

**115-**    The general allegations and the allegations contained in all the above paragraphs, inclusive are incorporated in this cause of action.

**116-**    The above defendants all benefited in the theft of Salessi's $55,000 in 2002, and by the chain forgeries and recordation of the property instruments.

**117-**    Not knowing all the true facts about the forgeries and frauds of these defendants, Salessi commenced Case #1-OSC 04CC11080, in 2004. Eventually, and upon default prove-up trials of October 25-26, of 2007, Salessi obtained **judgments totaling $825,000.** against four defendants, the said defendants were: Century Funding; its agent Frank Peimani; Southwood Pest Control (Southwood); Dana Ballard (Ballard).

**118-**    The judgment defendants, collectively, had probably received less than $25,000. for their conspiracies with the defendants in this count. Salessi has been unable to collect one cent from the judgment defendants, who seem to be judgment-proof.

**119-**    Salessi is entitled to an equitable subrogation, and substitution of judgment debtors, against the defendants named in this count, since the four judgment defendants, were at all times agents, representatives, and/or associates-in-fact, of the defendants in this count, and worked for their benefit to procure the fraudulent sale, and the fraudulent loans.

42

Century Funding was a direct wholesale lending agent of the bank defendants, acted as the principals of Century Funding, which had brokered thousands of loans for World Savings/Golden West. Ballard and Southwood had conspired with Merage Defendants, as their principal, in the fraudulent inspections of numerous properties, including Salessi's. A few of their fraudulent inspections, for Merage, had led to lawsuits. Merage-defendants have dozens of fraud lawsuits against them in and Los Angeles Counties.

**120-**    By this court's finding that, in 2002, this count's defendants acted as principals of Salessi's judgment defendants, this court can order the substitution of judgment debtors for the 2007 judgment as against these defendants, jointly and severally.

**121-**    This court has jurisdiction to substitute, and subrogate, the judgment defendants with this count's defendants, pursuant to ***28 USCA §1738*, the Full Faith and Credit Act**. It is further unfair that Salessi continues to suffer emotional, physical, and financial injuries even in collection of court-entered judgments, and for over six years.

**122-**    On this count Salessi is entitled and therefore seeks relief to collect from this count's defendants the entire judgment, as entered against judgment defendants in 2007 **(Exhibit-E)**, with its applicable incurred interests and costs. Wherefore, Salessi seeks a pretrial judgment from this court against this count's defendants, as a substitution for the former judgment.

**123-**    1

**124-**    1

43

## COUNT-5:

## VIOLATIONS OF CIVIL & CONSTITUTIONAL RIGHTS (42 USC §1983) UNDER THE COLOR OF STATE LAW

## SALESSI v. William M. Monroe, Frederick Hickman; AFRCT; Golden West; World Savings: Wachovia; County of Orange;

**125-**    With apparent authorities, and under the color of state law, Judge Monroe, in violation of Salessi's 5th, 7th, and 14th Amendments to the United States Constitution, as well as in violation of his civil rights pursuant to *42 U.S.C. §1983,* among other acts, refused to follow due process of law in the proceedings of Case #2 in his court by teaming with the defendants in the theft of the subject property from plaintiff, in violation of inter aila, *18 USC §242.* Plaintiff believes that, in the instant case, judicial immunity does not apply to Judge Monroe particularly that his judicial authority, thus jurisdiction, had been cut off on the morning of 8/7/2008, before he began conspiring with defendants, in *ex parte,* planning with them in the fraudulent auction of the house the next week, while first telling them that he had been "Hit with a challenge this morning…", and the fact that the challenge in fact had the effect of a gag-order, making it illegal for the judge to make any comments to any party in the lawsuit until the challenge had bee properly dealt with.

**126-**    Therefore, all the acts of the judge, followed by his receipt of the 8/7/08 challenge, were *ultra vires,* and that his judicial immunity was overcome, as his actions were in complete absence of all jurisdiction. See.

44

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT    FILED 3-11-2009**

Waco v. Mireles[24] quoting from Forrester[25] "a judge is not immune for
actions, though judicial in nature, taken in complete absence of all
jurisdiction[26].

**127-**    In application of judicial immunity, in Pulliam v. Allen[27], the
Supreme Court stated that "…This provision of the law is not for the
protection or benefit of a malicious or corrupt judge,…". The above quote
applies directly to Judge Monroe, as can be read in the forged transcript of
the court-reporter, dated 7/8/2008: **Please see (Exhibit-C) transcripts.**

**128-**    Further, the judge, ordered the alteration of the 7/8/08 transcript as
indicated in the attached exhibit, and the judge further perjured himself by
his statements on the recorder's transcript of 7/15/08, as it appears in the
same exhibit, amounting to judicially admitting to further alterations of the
court's transcript than was actually done. Process server William Mishlove
has his affidavit on the record regarding the judge's proximate statement
on 7/8/08 in scheming with Hickman/AFRCT to sell the house.

**129-**    Therefore, at that point, on the morning of 7/8/2008, Judge Monroe
no longer had a judicial function in Case #2, and should not be granted
such immunity. Further, if plaintiff can not seek due process against the
judge's misconducts, he has absolutely no other recourse. Plaintiff took
the matter of "Challenge for Cause" all the way to the California Supreme
Court, however, to no avail. It turns out that, pursuant to such failed

---

[24]  Waco v. Mireles, 502 U.S. 9, 112S.Ct. 286
[25] & 48, Forrester v. White, 484 U.S., at 356-357; Bradley v. Fisher, 13 Wall, at 351.
[25] PULLIAM  v. ALLEN, 466 U. S. 522 (1984) @ 531.

45

challenges, the Santa Ana Court of Appeal summarily denies all writ-proceedings, and that thereafter the Ca. Supreme Court affirms their denials. The Ca. Commission for Judicial Misconduct has an even lower rate of concern in such matters, thus making little sense to resort to. Thus even though the judge repeatedly violated CCP §170.3, no one at the state level cared less, and the challenge statutes are apparently treated as a void.

**130-**   The bank defendants, and their counsel, as listed above have also been complicit in their acts, all under the color of state, and/or, federal laws, in their conducts and their defense to their wrongful conducts, by among others, forging and recording false declarations and court-orders, subornation of perjury in declarations they provided to courts, extortion, blackmail and the like.

**131-**   As can be seen in the above-referenced transcripts, the judge and the bank defendants intentionally ignored Judge Gray's judgments entered against four defendants, establishing Salessi as the ultimately prevailing party in Case #1, while accepting fraudulent declarations of defendants that Salessi had lost the case.

**132-**   The County of Orange ("OC") has likewise, and under the apparent authority of the color of state law has seriously violated Salessi's constitutional civil rights by, among others, recording forged and fraudulent documents, and refusing to take any steps to expunge the said documents, or even conduct an investigation as mandated by Gov. Code §11180.5.  This refusal to take any action, despite OC's dominion and control over all the records, and the recording processes inculpates them

46

in the large-scale, county-wide, real-estate, title and lending frauds, which have generated trillions of dollars of income for a few, but miseries for the masses.

**133-**    Salessi has been injured emotionally, physically, and financially, for over 6 years by the complicities, and or reckless negligence of OC and is thus entitled to relief against them as against the other defendants in this count. Salessi also seeks similar relief for other similarly situated injured Orange County residents from these defendants.

**134-**        All these defendants have been the proximate cause of injury to Salessi, and similarly situated people, and Salessi will seek damages against them according to prove at the time of trial.

47

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**        **FILED 3-11-2009**

## COUNT-6:

## FOR PREPARATION & RECORDATION OF FALSE DOCUMENTS

## SALESSI v. Commonwealth, Skinner, Coast Cities Escrow; Cameron Merage; Golden West; World Savings; Wachovia; County of Orange:

**135-**    The general allegations and the allegations contained in all the above paragraphs, inclusive are incorporated in this cause of action.

**136-**    On, or about, 11-7-2002 defendants, without Plaintiff's knowledge or consent, fabricated and recorded at least two forged Grant Deeds, and at least two Forged Deeds of Trust,. The said Deeds had been forged by defendants in the following way:

**137-**    All the signatures, and mandatory details, appearing on the Aloma property's GRANT-DEED are forgeries. These forgeries include, but are not limited to, the following material items each of which items, on its own, rendered the GRANT-DEED null and void by the operation of law, as of the date of recording by Commonwealth, on 11/7/2002:

      a. the purported signatures of Patrick Ortiz (a fictitious name);

      b. The purported name of seller Patrick Ortiz, who does not exist;

      c. the purported signature of Debbie Ortiz (a fictitious name);

      d. the purported name of seller Debbie Ortiz, who does not exist. The true names of the purported grantors were Patrick F. Ortiz and Debra A. Ortiz;

      e. notary acknowledgement of defendant Skinner who was in Florida on the date of acknowledgement;

48

**SALESSI v. COMMONWEALTH – FIRST AMENDED COMPLAINT**      **FILED 3-11-2009**

   f.  notary stamps and signatures purportedly of Ann E. Skinner,

    Coast's manager, are all forgeries, evident even to untrained

    eyes, and in comparison to her signatures on her notary oath,

    and bond.

   g.  The Assessor's Parcel Number 637-124-012 is false;

   h.  The dates appearing as the date document created and the

    date executed are in reverse order and render the deed void by

    itself.

**138-** As a result of the above detailed forgeries the forged Grant Deed

did not pass legal title to Plaintiff Salessi, and as such legal title still

remains in the names of defendant Ortizes, as in when they purchased the

property in 1997 with the Grant-Deed. Defendants thus violated the

California common laws as set forth below:

**139-** The subject property forged Grant Deeds is void, in the Salessi

case: A forged deed is completely void and ineffective to transfer any title

to the grantee[28], here Salessi. A subsequent title derived through a forged

instrument is completely unenforceable, even if recorded and held by a

bona fide purchaser.[29]  Therefore, as a matter of law the Grant Deed from

the Ortizes purporting to grant title to Salessi is completely void and the

Ortizes must be ordered to deliver to plaintiff a legally acknowledged, and

notarized, Grant Deed, signed, notarized and acknowledged at plaintiff's

---

[28] <u>Wutzke v. Bill Reid Painting Service, Inc.</u> (1984) 151 Cal.App.3d 36, 43 [198 Cal.Rptr. 418]; <u>Forte v. Nolfi</u> (1972) 25
Cal.App.3d 656, 674 [102 Cal.Rptr. 455] (note and deed of trust); West's Key Number Digest, Deeds ☜⟶56(5), 70, 196(2),
211(3) [Miller & Starr: § 8:53. Forgery].
[29] AS ABOVE

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT**  **FILED 3-11-2009**

presence. In the alternative, the court should issue a judicial fee-simple title in plaintiff Salessi.

**140-**    By the multiple known acts of forgery and recordation, defendants also violated Title 18 USC §1341 (mail fraud), in addition to Title 18 USC §1343 (wire fraud), in four counts. By these acts they established a pattern of such criminal conduct, and thus satisfied the violation of RICO Title 18 USC §1961-1968, , with mail and wire frauds as its predicate acts.

**141-**    Against these defendants Salessi is entitled to at least $40,000. of civil damages for four counts of felonious recordations, pursuant to PC §115. Further, Salessi is probably entitled to four times $75,000. as criminal penalties for each count of felonious recordation. The state has waived its rights by refusing to take any action, and thus siding with the defendants here, therefore, Salessi believes that this court can render such judgment for Salessi.

**142-**    Salessi further seeks RICO damages against these defendants for their criminally-patterned acts in this regard, pursuant to *18 USC 1962.*

**143-**    These defendants have jointly, and severally, been the actual and proximate cause of Salessi's damages in the past 6+ years, therefore, Salessi is entitled to relief against them.

**SALESSI  v. COMMONWEALTH – FIRST AMENDED COMPLAINT      FILED 3-11-2009**